CHARLES M. BEACH'S APPEAL FROM COMMISSIONERS.

Hartford Dist., Oct. T., 1889. ANDREWS, C. J., CARPENTER, PARDEE, LOOMIS and FENN, Js.

*C* by a written contract agreed to deliver to a manufacturing company a quantity of machinery, of the agreed value of $12,456, for which the company was to give him its promissory note for that sum payable eight months after date; the company to set up the machinery in its mill, to keep it in good order and insured for *C's* benefit, and to hold it as the property of *C* until the note and its renewals had been fully paid, when it was to be sold to and become the property of the company; and on default of payment, or if it was not kept in good order and insured, *C* to have the right at any time to take possession of it and remove it as his own property; whatever had then been paid to go for the use of the machinery and the notes to be delivered up. Under this contract an absolute note was given by the company for the price at eight months, and when the note fell due another was given at six months for the same sum, with a payment of the interest in advance. Held—

1. That the contract must be construed as an absolute promise on the part of the company to pay for the machinery at the expiration of the eight months credit agreed upon.

2. That the right of the company under the contract to take possession of the machinery and use it until default and the right to acquire the legal title by the payment of the note, constituted a good consideration for the contract.

3. That there was no option left to the company to return the machinery and have the note surrendered; the option in the matter resting with *C* alone.

Whether *C*, having elected to enforce his claim upon the note, could at the same time retain his right to retake the machinery if the note was not paid:—*Quære.*

[Argued October 1st, 1889—decided February 7th, 1890.]

APPEAL from the doings of the commissioners on the assigned insolvent estate of the Home Woolen Mills Company, in allowing a claim presented against the estate in favor of Mary C. Crompton, taken by the appellant as a creditor of the estate; brought to the Superior Court in Hartford County and heard before *F. B. Hall, J.* The following facts were found by the court.

The Home Woolen Mills Company, a corporation organ-

ized under the joint stock law of this state and located in Hartford, was carrying on business prior to July, 1887, at Beacon Falls, in this state.

George Crompton of Worcester, Massachusetts, was a manufacturer of looms. In July, 1886, the company and Crompton executed the following articles of agreement in duplicate, which were dated March 3d, 1886, and embodied the terms of an agreement made by the parties at that time.

" This memorandum of an agreement made this third day of March, 1886, between George Crompton, of the first part, and the Home Woolen Co., Charles M. Beach, treasurer, of the second part.

" Whereas the said Crompton of the first part agrees to deliver to the said party of the second part certain articles of machinery, to wit: thirty broad Crompton "1883" fancy looms (twenty-eight of which are single beam looms, and two are double beam looms) and fixtures thereto belonging, amounting to $12,456.69, and the party of the second part agrees to give the party of the first part its promissory note dated the average shipping date of the looms, and payable eight months from its date, for $12,456,69.

" It is hereby agreed by the said parties, that the party of the second part shall be permitted to take the said property into their possession, and the same to take to and set up in the mill occupied by them in Beacon Falls, agreeing to keep the same in good order, and also to keep the same insured for the full cost of the same for the benefit of the party of the first part, and to hold the said machinery as the property of the party of the first part until the above note or renewals thereof have been fully paid, according to the tenor thereof, when the machinery above named shall be sold to and become the property of the party of the second part.

" And the party of the first part is hereby bound to sell and relinquish his claim to said property upon payment of the said note or renewals thereof, and does agree to consider the same as sold and delivered when said note or renewals thereof are paid.

" And it is further agreed that, upon default of the payment of the said note or renewals thereof when the same shall become due, as also in default of said machinery being kept in good order and insured as above provided, the party of the first part shall have the right at any time to resume possession of the machinery, and to enter the premises and remove the same as his own property. And if any portion of said note or renewals thereof shall remain unpaid when possession shall be so taken by the party of the first part or his authorized agent, then the amount which may have been paid shall be for the use of said machinery while in possession of the party of the second part, and said notes shall then be cancelled and given up. Witness the hands and seals of the parties aforesaid.

GEORGE CROMPTON.          [L. S.]

CHAS. M. BEACH, *Treasurer.*   [L. S.]"

The particular question in dispute is upon this contract.

In pursuance of its terms an eight months' note was given to Crompton by the company for the amount of $12,456.69, Prior to the maturity of this note Crompton died, but his administratrix, his widow, Mary Crompton, took a renewal of the note for six months. The renewal note was as follows:

"$12,456.69.          HARTFORD, CONN., January 15, 1887.

" Six months after date, for value received, the Home Woolen Mills Company promises to pay to the order of Mary Crompton, administratrix, twelve thousand four hundred fifty-six and $\frac{69}{100}$ dollars, at the office of the Crompton Looms Works, Worcester. (Signed), CHAS. M. BEACH, *Treasurer.*"

The interest upon this note was paid in advance.

About the time when this note matured in July, 1887, the Home Woolen Mills Company ceased to manufacture goods, and when the note matured made default of payment.

After the default the note was indorsed and delivered by Mary C. Crompton as administratrix to J. A. Ware, by whom it was indorsed and delivered to Mary C. Crompton,

and a suit was brought upon it by her in July, 1887, and was secured by attachment of the company's real estate.

After the attachment the company, through its attorney, wrote a letter dated September 12th, 1887, to the attorneys for Mrs. Crompton, and offered ten per cent. of the price of the looms for rent for their use. The offer and the tender as contained in the letter were declined. The company there-upon, and within sixty days after the attachment, namely, on the 26th of September, 1887, made an assignment in insolvency to George Beach, trustee, who accepted the trust and was duly qualified as trustee. The suit is still in court.

The following claim was presented against the insolvent estate of the company.

" Estate of the Home Woolen Mills Company, to Mary C. Crompton, *Dr.*

" To amount due by note dated January 15, 1887, and payable six months after date, . . . . . . . . . . $12,456.69.

" To interest on same after July 18, 1887, . . . . . .

" Preferred claim : writ, $2.45 ; officer's fees, $12.39; clerk's fee, $3.00 ; docket fee, $10.00, . . . . . $27.84."

The claim upon the note and the preferred claim for costs of suit were both allowed by the commissioners.

Chas. M. Beach, one of the creditors of the estate, takes this appeal from the doings of the commissioners.

On the 22d of March, 1889, the trustee of the Home Woolen Co., by his attorney, addressed a letter to the attorneys of Mrs. Crompton, offering to return the looms upon the return of the note of the company; stating that storage would be charged if the looms were not taken away. The attorneys for Mrs. Crompton replied, claiming that she had a right to re-take the looms so long as the note was not paid, but claiming all the other rights given by the contract of March 3d, 1886.

No representative of the Crompton estate has ever taken personal possession of the looms, which remain where they were in the factory at Beacon Falls. Nothing has ever been paid upon the price of the looms. The only cash payment

ever made was a payment of six months' interest upon the second note. The insolvent estate is still in the hands of the trustee, who has held the looms ever since his appointment. The company insured the looms for the benefit of Crompton and as his property on July 27th, 1886, but upon the expiration of the policies of insurance, July 27th, 1887, omitted to renew the same, and the attorneys for Mrs. Crompton then had the looms insured as her property, as administratrix of the estate of George Crompton. Mrs. Crompton has made no further relinquishment of title or interest in the looms than follows, or may be presumed, from the above facts.

· Upon these facts the appellant claimed as necessary conclusions of law that the consideration of the note had failed, that after condition broken the company had the right to return the looms, that the trustee had that right after the assignment, that the offers of the company terminated all their obligations under the contract, and that no claim upon the note or for the purchase price could be sustained, and that the note should not be allowed as a claim against the estate; but the court overruled each of these claims and affirmed the report and doings of the commissioners.

From this judgment the original appellant appealed to this court.

*H. C. Robinson* and *L. F. Robinson*, for the appellant.

1. The·record presents a clear case of a conditional sale under our decisions, as well as under the decisions of the federal and most of the state courts. *Forbes* v. *Marsh*, 15 Conn., 384; *Cragin* v. *Coe*, 29 id., 51; *Lewis* v. *McCabe*, 49 id., 141; *Warren Mfg. Co.* v. *Norwich Bleaching Co.*, 56 id., 70; *Harkness* v. *Russell*, 118 U. S. R., 663. It being a conditional sale, the trustee on finding himself a bailee of the looms, is obliged either to treat them as the property of the estate, and so to sell them at once, or to treat them as the property of Mrs. Crompton. He finds a suit pending against the insolvent for the purchase price, and, by the assignment, the security acquired by the attachment in

the mesne process dissolved. Whether such a suit so instituted by the seller is *ipso facto* a waiver of the condition of the sale, and an affirmance of the sale itself, without regard to the dissolution of its attachment, and whether the presentation of the claim to the commissioners is *ipso facto* a waiver of the condition and an affirmance of the sale, are very delicate questions upon which the authorities are not agreed. The Massachusetts court held in an early case, *Marston* v. *Baldwin*, 17 Mass., 606, that bringing a suit for the purchase price was merely evidence of a waiver, and not such an act as *ipso facto* and in law is a waiver. But in the recent case of *Bailey* v. *Hervey*, 135 Mass., 172, that court holds that the bringing an action for the price is an absolute affirmance of the sale. That case cites two others which are both cases of voidable transactions, and in which the same court held that a suit was an election to confirm and a conclusive refusal to avoid a sale. *Butler* v. *Hildreth*, 5 Met., 49; *Arnold* v. *Richmond Iron Works*, 1 Gray, 434. The case also cites *Heryford* v. *Davis*, 102 U. S. R., 235, 246. See also *Patten* v. *Smith*, 5 Conn., 196, 202. The trustee has endeavored to deal in the whole matter with absolute fairness, and he only insists that Mrs. Crompton cannot regain this property and at the same time lay claim to its purchase price; and therefore the appellant asks the court, in the event of its holding that the consideration of the note has not failed, to pass directly upon the question of the title to the looms.

2. The court erred in holding that Mrs. Crompton had any claim upon the notes or for the purchase price. According to our Connecticut construction of contracts of conditional sale, when the company offered to return the looms, after the conditions of the sale were broken, the consideration of the note failed and the appellee had nothing left to found a claim upon. The contract contains no agreement to purchase the looms. It contains no provision giving to Crompton a right to sue upon or collect the notes. The company by defaulting payment of the note surrendered its right to purchase the looms. Such a termination of the arrangement the contract not only contemplates but pro-

vides for. The sole remedy of the appellee expressed in the contract is in a resumption of possession of the property. In the analogous case of *Hine* v. *Roberts*, 48 Conn., 267, a contract was held to be a contract of conditional sale in which an organ was rented, the rent being paid by a melodeon and a promissory note. Upon payment of the note the title to the organ was to pass, and in default of payment the melodeon was to be forfeited as rent for its use. Suit was brought upon the note. The court say:—"The plaintiff now insists that the defendant shall not only forfeit the melodeon but shall also pay the note. He virtually inserts into the contract, in case of failure to pay the note, this further provision, 'And the said Hine shall be at liberty to sue for and collect the note.' The plaintiff seems to treat it as a conditional sale by him, but as an absolute purchase by the defendant. And the court seems to have sanctioned that view. We think that view does not give effect to the real intention of the parties." In the contract in *Appleton* v. *Norwalk Library Corporation*, 53 Conn., 4, there was a clause, similar to the one whose omission is noted in *Hine* v. *Roberts*, and which is not found in the contract under discussion; and on that clause the court established the distinction between the two cases of *Hine* v. *Roberts* and *Loomis* v. *Bragg*, and the case of *Appleton* v. *Norwalk Library Corporation*. In the last case the court say: "The contract expressly provides that in case of such breach all the remaining unpaid instalments shall immediately become due and payable. If they become due and payable in consequence of non-payment, of course a suit could be maintained for their recovery." It was also held in that case that the contract to purchase was an absolute one, and that there was no conditional agreement. In thus interpreting the terms of a conditional sale, where there is no agreement to absolutely purchase, the court was logically brought to the conclusion that since there is no right in the conditional vendor to force a sale upon the conditional vendee, the vendee has the right to return the property after default of payment. This right is expressly

upheld in the case of *Loomis* v. *Bragg*, 50 Conn., 228. This case was in all essential respects similar to the case at bar. There can be then no consideration for the note sued upon. The right of property in the looms is distinctly, by the terms of the contract, to remain in the appellee until payment in full of the note. The title of the looms under the terms of the contract cannot pass. What then is the consideration for the note? The opinion in *Hine* v. *Roberts* answers this question:—"From this view of the case it is apparent that the consideration for the note was not the mere abstract right to pay for and receive title to the organ, as the court charged the jury, but it was the actual purchase and the acquisition of title as an accomplished fact. The purchase failed; the title did not pass. There was therefore an entire failure of the consideration for the note, and the ruling of the court to the contrary was an error." As the consideration of the note, which was the only evidence of a purchase price should such a purchase be made, has failed, there is no longer any obligation upon the company. See, in addition to the cases already cited, *Third Nat. Bank* v. *Armstrong*, 25 Minn., 530; *Minneapolis Harvester Co.* v. *Hally*, 27 id., 495; *Gleason* v. *Knapp*, 26 U. Canada C. P., 553. After dishonor of the note the company had a right to return the looms. The company only agreed to keep the looms pending the life of the note and its renewals. After the maturity of the second note suit was brought upon it, and the company had no contract obligation to retain possession of the looms. The company by its letter of September 12th, 1887, divested itself of all possession of the looms under the contract. Thenceforward it became bailee independently of the contract. The legal effect was that the owners resumed possession under the contract and consented to a new bailment outside of the contract. The claim of title to the looms by Mrs. Crompton, after assignment in insolvency, made an end of any possible claim for the purchase price. The offer of the company before insolvency to pay rent for the use of the machines, in addition to the contract agreement for interest, was generous, but was not necessary. These con-

tracts of conditional sale nearly always provide for compensa-
tion for the use of property if the purchase is not completed.
Usually the provision is an exorbitant one.   In this instance,
for special reasons, Crompton was content to accept interest
on his money, the forfeiture of part payments, the company's
undertaking to keep the looms in good condition and to
fully protect him against loss from fire, and the hope of a
sale in the event of the company's success, as abundant com-
pensation for the use of the looms.   In this matter he sug-
gested his own terms, and they were accepted by the
company.   The views of our own court, cited above, are
substantially the views of the other courts in construing
these contracts of conditional sale.   See *Brown* v. *Haynes*,
52 Maine, 578; *Everett* v. *Hall*, 67 id., 497; *Bean* v. *Edge*,
84 N. York, 510; *Cole* v. *Berry*, 13 Vroom, 308.

*F. Chamberlin* and *E. S. White*, for the appellee.

LOOMIS, J.   The sole question for our determination is,
whether the promissory note described in the finding, dated
January 15th, 1887, given by the Home Woolen Mills Com-
pany, payable six months after date, to Mary Crompton,
administratrix (of George Crompton, deceased,) is a good
and collectible note.

The commissioners on the assigned estate of the maker,
now an insolvent, allowed the claim in full, and their doings
were affirmed by the Superior Court upon an appeal by a
creditor.

Although numerous errors are assigned as reasons for the
appeal to this court, yet the controlling question as it seems
to us relates wholly to the consideration of the note and the
remedy of the plaintiff for default of payment.

The note in suit is a renewal of the one mentioned in the
contract dated March 3d, 1886, given to George Crompton
by the Home Woolen Co., pursuant to the provisions of the
contract, and a determination of the questions relative to
the consideration and collectibility of the note will involve
also the construction of the contract.

No question is made as to the validity of the transaction. It belongs to the class of executory conditional sales so often sustained by the courts of this and other jurisdictions, even against attaching creditors. But the question here is between the parties and those who immediately represent them.

If then, as HOLT, Ch. J., so forcibly said in *Thorpe* v. *Thorpe*, 1 Salk., 171, "every man's bargain ought to be performed as he intended it," we cannot refrain from asking at the outset why should not the absolute promise contained in this note be performed? Was it in its inception a mere *nudum pactum*, lacking the requisites of a legal obligation to perform, or has there since been a failure of the consideration?

Unless it is all a mere waste of words, paper and ink, a good consideration is found in the mutual obligations which the contract imposed upon the parties. Under it the Home Woolen Co. had the possession, the right of possession, the right to use the property until default, and the right to acquire the legal title by the payment of the note. This was a vested interest of which the vendee could not be deprived except after default. Moreover it was an attachable interest under section 920 of the General Statutes. The vendee or any of its attaching creditors could compel the vendor to give a good title. In other jurisdictions the doctrine is well established that such contracts vest an interest in the vendee which is capable of sale or mortgage by him to a third person, so that the moment the vendee's title is perfected it passes to such third person. *Fosdick* v. *Schall*, 99 U. S. R., 235; *Carpenter* v. *Scott*, 13 R. Isl., 477; *Day* v. *Bassett*, 102 Mass., 445; *Crompton* v. *Pratt*, 105 id., 255; *Currier* v. *Knapp*, 117 id., 324; *Chase* v. *Ingalls*, 122 id., 383; Note to *Miller* v. *Steen*, 89 Am. Decisions, 128.

The case at bar is most remarkable in the fact that while the appellant claims a want or failure of consideration for the note, he at the same time concedes that there has been no default in any of the vendor's obligations mentioned in the contract, nor has possession of the looms been taken by

the vendor or his representative, nor has there been any interruption or disturbance of the vendee's possession. But strangely enough the failure of consideration is predicated solely upon the default of the vendee to perform his own promise—the same party who sets up the defence! That such may be the consequence of a party's own default we concede as a possibility, but only where it is so written in the contract and such intent is manifest.

And here counsel for the appellant say in effect that the decisions of this court in *Hine* v. *Roberts*, 48 Conn., 267, and *Loomis* v. *Bragg*, 50 Conn., 228, where contracts said to be essentially the same as in the case at bar were construed so as to give the precise effect to the vendee's own default, coupled with his act of returning the property, which we now characterize as so anomalous.

But the appellant's argument as based on the cases cited overlooks several most important and controlling distinctions. In the first place, the court there was not called upon to give effect to the sole default and the sole act of the vendees in returning the property after default, for in both cases these acts of the vendees were coupled with the corresponding acts of the vendors in accepting and taking back the property which they had conditionally sold. This of itself constituted a failure of the consideration, and had the looms in this case when tendered been accepted and appropriated by the vendor, the vendee would be no longer liable for the purchase price. The gist of the decision in *Hine* v. *Roberts* appears in the closing paragraph of the opinion: "The purchase failed; the title did not pass. The plaintiff *received the melodeon and the return of the organ* in good condition, which is all he contracted for in that contingency, and the defendant forfeits all previous payments (in this case the melodeon) which is all he agreed to forfeit. There was therefore an entire failure of the consideration for the note."

But it is said that the reasoning of the court in this, and in the other case referred to, supports the right of the vendees to return the property upon their own default, irre-

spective of any assent on the part of the vendors arising from their acceptance of the property when returned. This is true, and naturally occasions some hesitation as to the proper decision of this case. But the reasoning referred to was based upon a construction of those contracts whereby it was expressly provided that the vendees' default of payment should work a forfeiture of their entire interest in the property.

In *Hine* v. *Roberts* the very words which the vendee used in his contract were—"If I fail to pay any of said rent when due * * * *all my rights* herein shall thereupon *expire and terminate;*" which seems to justify the reasoning and conclusion of the court. In *Loomis* v. *Bragg* the same construction was given to the contract, although the language was less explicit. In the opinion of the court on page 231, it is said that the agreement provided for the contingency of a default of payment by the vendee "by a *forfeiture of all the defendant's rights under the contract.*"

In the case at bar, as it seems to us, no such construction can reasonably be given, for there is no express provision as in *Hine* v. *Roberts*, and none can be implied from the language used, as in *Loomis* v. *Bragg*, that the vendee can determine his interest in the property and revest it in the vendor by his own default merely. The option to give such an effect to a default rests wholly in the vendor, and the vendee's rights continue until the option is exercised. The mere absence of any provision in the contract as to a return of the property by the vendee, while expressly conferring on the vendor the right to reclaim it, of itself affords ground for an implication against the existence of any such right, but in this case it is expressly stated to be the duty of the vendee "to hold the said machinery as the property of the party of the first part, until the above note or renewals thereof have been fully paid according to the tenor thereof."

This case belongs to the class of which *Appleton* v. *Norwalk Library Corporation*, 53 Conn., 8, is the type rather than to that of *Hine* v. *Roberts* and *Loomis* v. *Bragg*, and

the language of the court in that case in reference to the claim of a right in the defendant to return books similarly bought, is equally applicable to this case. The court there say:—"It is said that the plaintiffs had the right, at their option, to retake the property at any time if the defendants should fail to pay any installment for a period of thirty days after it became due. But this is a right which the plaintiffs had in case the defendants should break the contract by non-payment. It gives the defendants no right to return the books."

But it is suggested that the present case is like *Hine* v. *Roberts* and *Loomis* v. *Bragg* in that no remedy except the right to resume possession is given to the vendor, and that it is unlike *Appleton* v. *Norwalk Library Corporation* in that there is no absolute promise to pay for the looms, as there was to pay for the books in that case. While we concede that there is some plausible ground for these distinctions, upon further reflection we find them unsatisfactory. In the first two cases the payments stipulated to be made at frequent intervals were called rent and the agreements were called leases, and although this court, taking into view the features of the entire transactions, called them conditional sales and not leases, yet the use of these words by the parties certainly has a legitimate bearing upon the construction of the agreements as to the point now under consideration, namely, whether the parties intended to give the vendors a remedy to recover the entire sum stipulated to be paid as a condition for vesting the title in the vendees.

In both cases also we find most ample provisions for the protection of the vendors. In *Hine* v. *Roberts* a large advance payment was made by delivery to the vendor of a melodeon, worth nearly one third the price of the organ. In *Loomis* v. *Bragg* the payment of a monthly rent was required, many times larger than the interest upon the full price of the piano which was the subject of the sale.

But in the case at bar the contract requires no advance payment and no rent or instalments are to be paid either at long or short intervals. The word " rent " does not occur

in the writing and its equivalent in idea only appears where it speaks of the consequences of a retaking of possession by the vendor, and provides for the cancellation of the notes, in which case any payments that may have been made it is said " shall be for the use of the machinery while the vendee was in possession." Even interest is not mentioned in the agreement, yet the finding shows that it was in fact paid in advance upon giving the present renewal note, and upon the supposition that the entire note could be collected when due the vendor had it in his power always to secure the pre-payment of interest or any other security as a condition for granting a renewal of the note. But the first note that was given pursuant to the contract had the interest included with the principal, which was due at the end of eight months, so that, had the question under discussion then arisen, the appellant could have claimed, consistently with his present position, that not even the interest was recoverable, for its payment was only obligatory as part and parcel of the principal, which could not, he says, have been recovered by suit. But if the interest could have been or could be recovered apart from the principal it would be a very inadequate protection to the vendor for the risk and deterioration incident to the use of such machinery by another. As matter of common knowledge we may safely assume that the property in question, if subjected to only ordinary wear, would, if taken back by the vendor, necessarily be greatly depreciated in its market value, for it would have to be sold again, if at all, as second-hand machinery, and the vendor must inevitably lose the whole difference between the value of new and of second-hand machinery, which in an investment of over twelve thousand dollars, as in this case, would be too serious a matter to be lost sight of in the contemplation of the parties. The appellant's construction of the agreement would put upon the vendor all the risks and losses, (of which there are many besides those mentioned,) incident to the agreement and its subject matter, and at the same time give to the vendee all possible benefits, while exempting him from all obligations except such as he might be well pleased to

fulfil. It is incredible that a contract so one-sided, and a remedy so inadequate for the vendor, should have been intended by the parties.

Any construction leading to such results ought not to be accepted unless plainly required or necessarily to be inferred from the language of the contract. We think the contract in this case admits of a different and more reasonable construction.

We have already seen that no option to return the property is given to the vendee merely upon his own default, which has an important bearing upon the questions whether the parties have restricted the remedy of the vendor solely to a retaking of the property, and whether there was any promise by the vendee to pay the purchase price. We have also adverted to the provision that the vendee shall hold the property as that of the vendor until the note and its renewals have been fully paid, which indicates that actual payment was contemplated; and we have in addition the note itself, which contains a direct promise, without condition or contingency, to pay the purchase price of the looms; and this note being provided for in the contract and made part and parcel of it, ought to be read as if inserted in the body of the contract. All these considerations make it reasonable to construe the agreement as containing an absolute promise to pay for the property at the expiration of the eight months credit agreed upon. And this brings the case within the principle of *Appleton* v. *Norwalk Library Corporation*, where this court said:—" This contract is an absolute one. The plaintiffs agreed to sell the books to the defendants for the sum of ninety dollars, to be paid in instalments at certain specified times. The defendants agreed to pay that sum according to the terms of the contract. There is no conditional agreement here. It is true that the title to the goods did not pass, and could not pass until the full sum of ninety dollars had been paid, but the promise to pay that sum was absolute. Whence then comes the defendant's right to return the books in full satisfaction and discharge of the contract, and thus leave a great part of the instalments

unpaid?" And speaking of the plaintiffs' right to recover possession of the books, the court further says :—" But this is not their only remedy. The contract expressly further provides that in case of such breach all the remaining unpaid instalments shall immediately become due and payable. If they become due and payable in consequence of nonpayment, of course a suit could be maintained for their recovery."

Another question involved in the reasons for the appeal, and very briefly referred to in the argument for the appellant, is, whether the appellee, by bringing a suit on the note and attaching the property of the vendee thereon, and by refusing to accept the property when tendered back, and by presenting the note to the commissioners as a claim against the estate of the vendee, thereby affirmed the sale and waived her right to recover back the property.

The counsel for the appellee insisted that this question was not properly before this court and declined to argue it. It is true this suit is not for the recovery of the machinery, but only for the recovery of the amount of the note. The vendee has not been disturbed in his possession of the property and it is not certain that he will be. But the facts referred to as to the conduct of the appellee all appear on the record, and so far as they affect the right to recover the note now in question the matter is legitimately before the court. And although our present decision must be confined to the claim on the note, yet the note and the property may have such relations as that the principle established as to the former may virtually determine the question as to the property, should it hereafter arise. The controlling question in the present case, as we have seen, relates simply to the consideration of the note.

If then the action of the plaintiff, as found in this case, had the effect to affirm the sale and pass the title of the property to the vendee, at the same time it must have prevented a failure of the consideration of the note, and if the title did pass it follows also that the plaintiff cannot recover the property in any suit founded upon the contract. For

these reasons we regret that the question was not fully argued.

The case of *Bailey* v. *Hervey*, 135 Mass., 172, was cited, and as it was based on a contract similar in effect to the one under consideration, it seems to be directly in point. The action was brought by the conditional vendee against the vendors for taking the property away, and the defendants attempted to justify under their contract after default of payment was made by the vendee. ALLEN, J., in delivering the opinion of the court said: " When the plaintiff discontinued his payments on account, what was the legal position of the defendants? If it be assumed that they might at their option either reclaim the goods as their own property, without any obligation to account for the proceeds or value to the plaintiff, or that they might collect the price in full, it is plain that they were not entitled to do both. They could not treat the transaction as a valid sale and an invalid one at the same time. If they reclaimed their property, it must be on the ground that they elected to treat the transaction as no sale. If they brought an action for the price they would thereby affirm it as a sale. Two inconsistent courses being open to them, they must elect which they would pursue; and electing one they are debarred from the other. Reclaiming the goods would show an election to forego the right to recover the price. But instead of reclaiming the goods in the first instance, they brought an action against Bailey for the price, made an attachment of his property by trustee process, entered their action in court, and he was defaulted."

To accept this as good law would be to establish a principle which would, upon the facts found, preclude the appellee from hereafter reclaiming the machinery in question. And while we feel impressed with the clear and cogent reasoning contained in the opinion cited, and are aware that it may receive further support from other decisions to the same effect, yet inasmuch as the point was not argued at all by the appellee and only briefly for the appellant, and as its adoption would only furnish one independent additional reason

for a conclusion already reached by a majority of the court, it is deemed best on the whole to leave the question open for further consideration and decision after full argument.

There was no error in the judgment complained of.

In this opinion ANDREWS, C. J., PARDEE and FENN, Js., concurred.

CARPENTER, J., (dissenting.) I cannot take the same view of this case, so far as the main question is concerned, as is taken by a majority of the court. The rights and duties of the parties are such, and such only, as are expressed or necessarily implied in the contract, including the note. What is the true interpretation of that contract? In other words, what did the parties intend?

The party of the first part, Crompton, agreed to deliver into the possession of the party of the second part, the Home Woolen Company, certain machinery, which the company was at liberty to set up and use in its mill at Beacon Falls, and when the note was fully paid, and not before, Crompton agreed to sell the machinery to the company.

The company on its part agreed to give its note for the value or price of the machinery, to keep it in good order, to keep it insured for its full cost for the benefit of Crompton, and to hold the same as his property until the note or the renewals thereof should be fully paid. And it further agreed upon default of payment, or failure to keep the machinery in good order or insured, that Crompton might resume possession of the same, and might enter the premises for that purpose. In that event it was agreed that whatever payments might have been made upon the note should be for the use of the machinery, and that the note should be given up and cancelled. These, I believe, are all the provisions of the contract proper. I find nothing in it indicating a present sale; nothing evincing an intention to vest any title whatever in the company until the notes should be fully paid. There not only was no agreement by the company, even by implication, to purchase the property before such

payment, but Crompton was careful to provide that until then there should be no such sale. If this is a fair and full statement of the contract, and I think it is, where, permit me to ask, does Crompton get his authority to convert this transaction, by his own act, and against the will of the other party, into an absolute sale? The only answer is, that the note contains an absolute promise to pay the purchase price. Let us see. The promise is absolute to pay the sum named therein, precisely as it is in any accommodation note. The inference that it is an absolute promise to pay the purchase price of the machinery, is not warranted by the contract or by the facts of the case. It is true the parties contemplated a probable purchase; it is equally true that they contemplated a possible failure to purchase; and they made provision for both contingencies. In the latter event the note was to be given up and canceled and no further payment required of the maker — precisely the course taken with accommodation notes. If the maker should pay, then the machinery should become its property, the payment being in effect the payment of its own debt upon a consideration then for the first time coming into existence — the acquisition of title to the machinery. Nothing could be clearer, and, it may be added, nothing fairer. This view gives effect exactly and fully to the intentions of the parties.

In this connection I will suggest that it is not strictly true that the use of the machinery can be regarded as a consideration for the whole note; for the parties provided otherwise. They expressly provided that if the purchase failed the sums *paid* on the notes should be compensation for the use of the machinery. Nor is it true that the right or option to purchase was the consideration, for it is provided that if there was no purchase the note should not be paid but canceled. From these considerations it logically follows, and it seems to me conclusively so, that the note when given was without consideration except as payments might be made thereon, and that it should be regarded as an accommodation note unless paid by the maker.

It is practically said that the transaction was virtually a

sale; that the real object of the parties was a sale; that the form which the transaction took was for the mere purpose of security; and that the provision for Crompton to resume possession was for his benefit, a privilege which he might waive; and hence, by implication, that he had a right to treat the contract as absolute. My objection to that theory is, that the court is implying a contract when the parties have made an express one of an entirely different tenor. It is in effect a substitution by the court of a contract which the parties did not make, in place of one which they did make. I suppose the court exhausts its duty when it construes the contract made by the parties.

I think the real principle involved in this case was decided adversely to the claim of the appellee in *Hine* v. *Roberts*, 48 Conn., 267, and *Loomis* v. *Bragg*, 50 Conn., 228. In those cases, as in this, notes were given for the full value of the property, and the contract provided that upon their payment the title should vest in the maker; it also provided that upon default of full payment all payments made should be forfeited, and that the vendor might resume possession of the property. In those cases, as in this, there was a provision that if the maker paid the notes he should become the owner of the property, and by clear implication he was at liberty to decline payment, in which case the contract clearly defined the rights of the parties. In neither of the cases is there any intimation that the seller has any right to convert the transaction into an absolute sale against the will of the other party. In those cases, as in this, suits were brought on the notes after a default, and in neither of them was the suit sustained. In *Hine* v. *Roberts* it was distinctly held that the consideration of the note was not the use of the musical instrument with a right to purchase, but the purchase price upon an accomplished sale, and that, the sale failing, there was a failure of consideration. The court also declined to hold that it was a *conditional sale* by the vendor and an *absolute purchase* by the vendee; but on the contrary held that it was at the option of the vendee to complete the purchase or not. In all these respects that case was exactly

like this, and should control it. *Hine* v. *Roberts* was fol-
lowed in *Loomis* v. *Bragg*, and in addition thereto it was
distinctly held that the plaintiff had no remedy except that
provided by the contract.

An attempt is made to distinguish this case from those, in
that, in each of them, the property had been returned to
and accepted by the seller, while in this there has been an
offer to return it and the seller declined to receive it. I
cannot conceive how that fact can affect the principles in-
volved. If the consideration failed when the purchase failed
and the purchasers elected not to pay the note but to return
the property, the refusal of the seller to receive the property
could not revive the consideration. One party alone cannot
revive a contract which has become inoperative by its terms,
nor materially modify an existing contract. If it is true
that the appellee had no remedy but that named in the con-
tract, she could not by waiving that acquire another.

The only possible ground on which it can be said that the
refusal to receive the property gave her a right of action on
the note, is that she had a choice of one of two remedies,
and that she might waive one and elect to pursue the other.
But if she was confined by the contract to one remedy the
doctrine of election has no application. Moreover, how is
it possible that the act of one party, long after the making
of the contract, and after the relation of each party to the
subject matter has become permanently fixed, can change
or affect the construction of the contract? Therefore it is
of no legal significance that the appellee is not now in the
possession of the looms; possession has been urged upon
and refused by her. It is the law of the cited cases that it
was the right of the Home Woolen Company at any time to
tender the looms to her, and that such tender would consti-
tute a perfect defence to a suit on the note. In short it is
the law of those cases that persons of full capacity may
make such lawful bargains as please themselves, and when
made must abide by them.

If we should enter the field of speculation as to what
either party intended by the contract, we doubtless should

reach the presumption that both accepted the interpretation which this court has put upon similar contracts as the measure of their rights and obligations under this.

It is of no legal significance that the Home Woolen Company has used the looms and has made no partial payments. The owner dictated the terms upon which he would part with the possession and give the right to use; he balanced the possibilities as to loss or gain, and he must be content with the measure of redress which he reserved for himself; the case must stand as if partial payments had been made and forfeited.

Crompton put the looms in possession of the Home Woolen Company, with permission to use; agreeing to sell them to it at a price then fixed, if it should make payment on a named day. The company delivered to him its note, payable on that day, for a sum equal to the price and interest; but, by agreement, the absolute title to the looms remained in him, and is there to this day, the company not having made payment.

Under this contract, therefore, interpreted by this court as have been similar contracts in the cases cited, the note in question, although in the usual unconditional form, was, by agreement, given and received solely as a memorandum of the sum which the company must pay if it should thereafter desire to acquire ownership, and to be, if used, an accommodation note. And it is the law of those cases that inasmuch as no property passed there could be no consideration for the note; and of course no enforcement of payment.