GEORGE ROBINSON'S APPEAL FROM COMMISSIONERS.

Hartford Dist., Oct. T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and BALDWIN, Js.

$R$ gave to a firm the possession of a quantity of plumbers' stock, upon a written receipt signed by the firm by which it was to hold it as the property of $R$ and for the use of it to pay within six years $8,000 in certain installments, with interest from the date of the contract, and

when the sum paid should amount to $8,000, with the interest, *R* was to sell and deliver the stock to the firm. The firm was to have the right to sell it in the regular course of the business, but if the full amount was not paid, was to return to *R* on demand all that was not disposed of, with any new stock that had been procured and added to it. The firm paid $1,500 and went into insolvency. *R* presented a claim against the assigned estate, allowing the sum of $2,800 for the stock left, which was its fair value, the trustee in insolvency declining to take it. Held that *R* was entitled to recover the $8,000, reduced by the $1,500 paid and by the $2,800, together with interest on the unpaid principal from the date of the contract.

The obligation of the firm to pay the $8,000 was an absolute one. The provision that if any part of the debt was not paid the firm should return the property undisposed of to *R* on his demand, gave it no right to return it of its own accord in discharge of the remainder of the debt.

So far as the contract gave the firm power to sell any of the stock in the course of its business, any sales made were not made by it as owner, but under a power conferred by the owner.

The only act of reclamation of the property on the part of *R* was the giving the firm credit on his claim as presented for $2,800 for the goods on hand. Held that he could not be considered as having elected to take this remnant of the stock in satisfaction of what remained of the contract debt.

If the stock had not been reduced at the time of the assignment, and *R* had then demanded and taken it, he would have manifested an election to rescind the contract as to any acts to be thereafter done.

[Argued, in advance of the term, June 14th—decided July 6th, 1893.]

APPEAL from the disallowance of a claim by commissioners on the insolvent estate of a partnership known as the Robinson Lead Company; taken to the Superior Court in Hartford County, and tried to the court before *Robinson, J.* The following facts were found by the court.

On January 1st, 1890, the appellant delivered to the partnership possession of the stock and merchandise in his plumber's store in Hartford, and they signed and gave him a paper of that date, acknowledging that they had "received" the same from him, "as fully described in an inventory of the same date," and then proceeding as follows:—

"Which said property we receive and are to hold solely as the property of the said George Robinson, and for the use of said property we promise to pay to said George Robinson the sum of eight thousand dollars. Said sum is to be paid in installments of such amounts, and at such times, as shall be

convenient to the partners aforesaid, saving and with the condition that the whole or principal sum of eight thousand dollars shall be paid before the first day of January, 1896. Also, that during and at some time of each year, beginning with January first, 1890, and ending January first, 1896, said parties shall pay to said George Robinson a sum of money equal in amount to five hundred dollars during the first of said years, and one thousand dollars during the second of said years, and a proportionate amount of the balance unpaid during each of the remaining years of said term; also interest on the whole amount unpaid at the rate of six per centum annually, which said interest we agree to pay semi-annually on the first secular days of July and January of each year of said term.

" All of the above specified payments made by us to the said George Robinson for the use of the said property shall be indorsed upon this receipt; and when the sums so paid by us shall amount in the aggregate to the sum of eight thousand dollars, with interest added thereto on all unpaid balances from the date of this receipt at the rate of six per centum per annum computed semi-annually, then said George Robinson shall sell and deliver to us the property hereinbefore described; but until such payment is made by us in full we neither claim nor can we acquire any title whatsoever to the property herein described. And failing to make said payments above mentioned, we also promise to return the above-named property on demand, or so much of the above-named property as shall not have been lawfully used by us in the regular prosecution of the business which we are to carry on at said location, together with any additional stock of merchandise which may have been obtained from other parties by us, or either of us, without costs to him, the said George Robinson. All accretions or additions to said stock and merchandise shall at all times belong to said George Robinson until the aforesaid amount is paid to him in full.

" And we also agree to have the property hereinbefore described, together with the additions and accretions thereto, insured in the name and for the benefit of said George Robinson, and to pay the cost of the premium thereof."

In fact no inventory of the stock and merchandise was made at the date of this instrument.

In March, 1892, the partners made an assignment in insolvency. Of the property so received by them they had by this time sold or disposed of a considerable part. The balance, which was worth about $2,800, they had removed from the store where it was when received by them, to another store, except certain shelving and fixtures, which the appellant claimed as part of the real estate and refused to allow them to take away. All payments falling due under the contract prior to their insolvency had been duly made.

The trustee in insolvency did not inventory or take possession of the stock and merchandise remaining in their hands, and notified the appellant to take it away. The latter did not do so, and it remained in the possession of the insolvents.

The appellant presented the following claim to the commissioners :—

    " Robinson Lead Co., to Geo. Robinson,      Dr.

" To goods received under conditional contract
     of sale  .    .    .    .    .    .    .    $8,000

" Less cash paid upon contract,    .    .    .    1,500

    " Balance,.    .    .    .    .    .  .    .    $6,500

" Less goods now said to be on hand,    .    .    2,800

    " Balance of goods sold, as per contract price, $3,700
" Interest on $6,500, from January 1, 1892, to
    time of assignment."

Upon these facts the court rendered judgment for the appellees, and the appellant appealed to this court.

*T. M. Maltbie*, for the appellant.

1. The claim should have been allowed. Since the decision of *Lewis* v. *McCabe*, 49 Conn., 141, no question can exist as to the validity of this contract. The obligation on the part of the vendees to make the stipulated payment was absolute.

2. The appellant could reclaim the property remaining, and

recover the value of that which had been used or sold, or at least have that value allowed as a claim against the insolvent estate. The vendees received the property to continue a business already established, and could only use it and the money derived from sales in the usual course of business, for that purpose. The title to the goods was in the appellant until the contract price was wholly paid. Whatever was received for the goods until that amount was paid, also belonged to the appellant. *Tibbetts* v. *Towle*, 12 Maine, 341; *Rogers* v. *Whitehouse*, 71 id., 222; *Burbank* v. *Crooker*, 7 Gray, 158.

*A. L. Shipman*, for the appellee.

1. The trustee in insolvency has no title to the merchandise in question, and therefore cannot be made to pay its price. That a trustee in insolvency has no title to property delivered to insolvent debtors on conditional sale is elementary law. He represents the body of creditors. They could not attach the property as the vendees', nor could they obtain a good title by conveyance. All the many decisions in this state agree on this point. See also *Rogers* v. *Whitehouse*, 71 Maine, 222; *Crawcour* v. *Salter*, L. R., 18 Ch. Div. 30. The exception which gives to second vendees a title to specified portions of the goods sold, is apparent rather than real, for it is the understanding of the parties to the original transaction that the vendee must sell to make the profit which shall pay the original contract price. The title which the second vendee gets is not derived from the first, but from the original vendor. *Lewis* v. *McCabe*, 49 Conn., 141; *Rogers* v. *Whitehouse*, 71 Maine, 222; *Armstrong* v. *Houston*, 38 Verm., 448; *Burbank* v. *Crooker*, 7 Gray, 158.

2. The amount of depreciation of the property was rightly disallowed by the commissioners. This follows from the contract itself. In conditional sales the vendor takes the risk of loss or damage to the subject matter when in the vendee's hands. He charges for it. Benjamin on Sales, § 427; *Swallow* v. *Emery*, 111 Mass., 355.

3. There can be no claim in behalf of the appellant for breach of contract by the insolvent debtors, because at the

time of the assignment there was no default. Nor for the use of the property, for it is contemplated by the agreement that the payments already made are for that purpose. Nor for damages, because the only damages stipulated are the forfeiture of the payments already made and the retaking of the property. The appellant relies upon the case of *Beach's Appeal from Commissioners*, 58 Conn., 464, as distinguished from the prior cases of *Hine* v. *Roberts*, 48 Conn., 267, and *Loomis* v. *Bragg*, 50 Conn., 228. There is no doubt that much of the language of the court in that case might be quoted in support of the appellant's position in this case. But the language is based upon essentially different facts. In the present case the contract is strictly one of lease; the sale is not to be made until $8,000, with interest on all unpaid balances, had been paid. The essential portion of the agreement is contained in the words, " which said property we receive and are to hold solely as the property of the said George Robinson, and for the use of said property we promise to pay to said George Robinson the sum of eight thousand dollars." The insolvent debtors had the option of making it a sale upon fulfilling the condition—the payment of the installments and interest. As all leases of real property are terminated by an insolvent assignment, and a trustee has the option to keep or abandon the tenement and be relieved from the liability for rent (*White* v. *Griffing*, 44 Conn., 437,) so the trustee here had a like option. As an insolvent debtor's estate is only liable for the rent accrued prior to the presentation of the claim, so the estate under this contract is liable only for the installments " for the use of the property " due at the time of the presentation of the claim. The insolvent law of Massachusetts is practically the same as that of this state. Its effect on leasehold contracts is set out by Judge GRAY in *Deane* v. *Caldwell*, 127 Mass., 242. He says (page 244:) " *A fortiori*, it (a claim for rent subsequent to the assignment) could not be proved against the estate of a living insolvent debtor under the insolvent law of the commonwealth, which * * * allows no debts to be proved except such as are 'absolutely due' at the time of the first publication of notice."

BALDWIN, J. The rights of the parties depend on the effect of the instrument under which possession of the stock and merchandise in the appellant's store was received by the insolvents. Construed as a whole, it amounts substantially to a conditional sale, on credit, for $8,000, by the terms of which the absolute title was not to pass to them until full performance of the obligation which they assumed, but by which they were invested with the power to transfer an absolute title to all or any part of the goods to third parties, with whom they might deal in the ordinary course of their business as plumbers. The provision that upon a default in making the agreed payments they were to return the property with any accretions on demand, or so much of it as should not have been " lawfully used " by them " in the regular prosecution " of the business which they were " to carry on at said location," necessarily implies a right to use all or any part of the property in the same manner as if they owned it, in the usual course of dealing at their store. They could thus transfer a greater title than they had, but they did so, not as owners, but under a power conferred by the owner. *Lewis* v. *McCabe*, 49 Conn., 141, 155.

Had they thus worked up all the material, and sold off all the finished goods, prior to their insolvency, this would not have shortened the agreed term of credit. There was no relation of dependence between their sales and collections and the payments they were to make to the appellant. Had they made no sales they would still have owed him the full $8,000. It was an entire sale to them for an entire price.

Their promise to return to him, on his demand, in case of their failure to make any of the agreed payments, so much of the property turned over to them as had not been used, with all accretions, was plainly inserted in the contract for his benefit and not for theirs. It did not authorize them because of their own default to throw the remnants of the property back upon him, and by so doing escape payment for what they had used up or sold to others. *Appleton* v. *Norwalk Library Corporation*, 53 Conn., 4, 8 ; *Beach's Appeal from Comrs.*, 58 id., 464, 475 ; *Crompton* v. *Beach*, 62 id., 25, 38.

The trustee in insolvency occupied no better position in this respect. The contract was one sanctioned by the laws of this state, and he had no greater rights under it than the insolvents had. He had, indeed, less. The power to use or sell, which the contract gave, was personal to the insolvents, and dependent on their continuance in the plumbing business. *Rogers* v. *Whitehouse*, 71 Maine, 222; *Crawcour* v. *Salter*, L. R., 18 Ch. Div., 30.

At the date of their assignment they were indebted to the appellant in the sum of $6,500 only, having duly paid the first two installments of the contract price. They had an interest in the remaining goods which was transmissible to their trustee in insolvency, and which his payment of $6,500, in the installments agreed, would have converted into a perfect title. *Newhall* v. *Kingsbury*, 131 Mass., 445; *Beach's Appeal from Comrs.*, 58 Conn., 464, 473. He finding, however, that the goods were worth less than the debt which rested upon them, declined to take possession, disclaimed title, and notified the appellant to remove them from the store occupied by the insolvents.

By the credit of $2,800, which it is found was about their value, given on this account in the claim presented by him to the commissioners, the appellant has, in effect, acknowledged that the goods have been restored to him, made the insolvents bailees of them for him, and agreed to a deduction from his claim against the estate to the extent of $2,800.

It is claimed by the trustee in insolvency that his disclaimer of title, coupled with his notice to the appellant to take the property away, and the subsequent action of the latter, have discharged the debt.

Had all the property received by the insolvents under the contract remained in their possession at the time of their assignment, and had the appellant then taken possession of it again, whether on his own demand or on a disclaimer by the trustee, he would have thereby manifested an election to rescind the contract as to any acts to be thereafter performed. *Crompton* v. *Beach*, 62 Conn., 25, 35. But a considerable portion of this property had been sold or used up before the

insolvency, and the contract furnished no rule of apportion-
ment by which to ascertain the value of the use thus made
of a part, and otherwise made of the rest, and to apply a
credit therefor on the remaining debt.   Nor did the appel-
lant demand a return of the goods left on hand.   The title
had always been in him, and, when the trustee renounced
any claim to them, the only interest not wholly in the ap-
pellant was that of the insolvents, which had become practi-
cally valueless by their assignment.   The goods still remained
in their possession, and the only act of reclamation on the
part of the appellant is the credit given on the claim pre-
sented to the commissioners, for " goods now said to be on
hand, $2,800."

Under these circumstances we think he cannot be deemed
to have elected to take these remnants of the stock and mer-
chandise which he had sold, in satisfaction of the contract
debt.

In *Crompton* v. *Beach*, (*supra*,) the agreement of condi-
tional sale provided that the vendor might resume possession
in case of any default in payment of the purchase money,
and that thereupon all payments theretofore made should be
treated as rent and any obligation to make future payments
canceled, and we held that he could not, upon a total de-
fault, present a claim for the whole purchase money against
the insolvent estate of the vendees, receive a dividend, and
then replevy the property sold from the trustee in insolvency
on a claim of title.   In the case now before us both the con-
tract and the acts of the parties under it were materially
different.   The trustee left in the hands of the insolvents a
fund of $2,800, in which they had an interest, but an inter-
est which their insolvency had practically deprived of any
value.   Their obligation to complete their contract payments
remained undischarged.   By surrendering the property to
the appellant, its rightful owner, and by his accepting it as a
credit of $2,800 on account, he virtually received a payment
from them of that amount on their contract indebtedness
thereafter payable.   It came from them and not from the
estate.   It came from them by relation as of the date of

their assignment, as soon as the trustee decided not to claim the property. It had the same effect, therefore, as if, immediately prior to the assignment, they had without fraud anticipated their obligations by paying the appellant $2,800. His claim against their estate was thereby correspondingly reduced, and instead of being $6,500, now amounted to but $3,700. As such he presented it, and while no part of it was yet payable, nevertheless, as the obligation was fixed and certain, and the debt drew interest from January 1st, 1892, the account was a proper subject of allowance, and the form in which it was stated was substantially correct. *Bacon* v. *Thorp*, 27 Conn., 257, 261.

The judgment of the Superior Court is reversed, and the cause remanded with directions to enter judgment allowing the claim of the appellant in full as presented, for $3,700, and interest on $6,500 from January 1st, 1892, to the date of the assignment in insolvency.

In this opinion the other judges concurred.