## MARY C. CROMPTON, ADMINISTRATRIX, vs. GEORGE BEACH.

Hartford Dist., March T., 1892. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and FENN, JS.

C by a written contract agreed to deliver to a manufacturing company a quantity of machinery of an agreed value, for which the company was to give him its promissory note for the price payable in eight months; the company to set up the machinery in its mill and to hold it as the property of C until the note had been paid, when it was to be sold to and become the property of the company; C to have the right at any time, on default of payment, to take possession of it and remove it as his own property, and whatever had then been paid to go for the use of the machinery and the note to be delivered up. Held that C could not enforce his claim upon the note given by the company, and at the same time retain the right to retake the machinery if the note was not fully paid.

[Argued March 2d—decided April 1st, 1892.]

REPLEVIN for certain machinery claimed to be unlawfully detained by the defendant; brought to the Superior Court in Hartford County, and tried to the court before *Robinson, J.* Facts found and judgment rendered for the defendant, and appeal by the plaintiff. The facts are in large part the same as those stated in *Beach's Appeal from Commissioners*, 58 Conn. R., 464, and all further facts appear in the opinion.

*F. Chamberlin* and *E. S. White*, for the appellant.

1. The contract must control. No question is, or can be, made as to its validity. It belongs, in the general, to a class known in law as executory conditional sales (58 Conn., 473), but in its special provisions it is *sui generis*. It is, therefore, of prime importance that the *particular*, as well as the general, provisions of these articles of agreement should be constantly kept in mind. And it should be noted at the outset that one feature in which this agreement differs from the simplest kind of conditional sale consists in *the method which the parties selected for the liquidation and settlement of their rights in the event of the vendor being obliged to take possession of the looms.* As in other cases of conditional sale, it must be presumed that the retention of the title was for the purpose of protecting and securing the rights of the vendor, but instead of leaving to the law the adjustment of the parties' rights after the vendor's resumption of possession, *that matter was made the subject of express contract.* Had our contract been terminated by the vendee's default, as in *Hine* v. *Roberts*, 48 Conn., 267, the Home Woolen Mills Company's tender of the looms would have been a bar to any action upon the note; for such a termination of the transaction would have rescinded the agreement and left both parties to such rights, and such only, as they would have had outside the agreement rather than under it. The bargain would have fallen through, and both parties been discharged from all its obligations as well as deprived of all its benefits. The company would have been entitled to its note and the Crompton estate to its machinery, and neither would have been under any obligation to retain the property of the other. With contracts like that in *Hine* v. *Roberts*, and the one construed by the court in *Loomis* v. *Bragg*, 50 Conn., 228, the vendor, after the vendee's default, can only have a right to recover back the subject matter of the conditional sale. Contracts of that type are terminated by the vendee's default *ipso facto*, and the vendor is left to such remedies, and only such, as the law gives him for the recovery of his property; but our contract is a radically dif-

ferent one (as we will more particularly show further on), and we ask this court, in its consideration, to carefully guard against applying to it the law of other cases so essentially different as to entitle them to little worth as precedents here. The contract in *Bailey* v. *Hervey*, 135 Mass., 172, *was terminated absolutely*, like that in *Hine* v. *Roberts*, *by the vendee's default.* It was therefore essentially different from the one in this case, and so unlike it as to prevent the case from being in any respect a controlling precedent. More of this case later.

2. The plaintiff's rights and remedies under the contract. It expressly provided in behalf of the vendor—1. That upon default of payment of the note, or default of the machinery being kept in good order and insured as agreed, Crompton should have the right to resume possession at any time and remove it as his own property.—2. That the amount which might be paid on any notes prior to Crompton's resuming possession should be for the use of the machinery, and any unpaid note should then be canceled and given up. It is important to note also that the parties expressly agreed that all payments, short of payment in full, prior to Crompton's retaking the looms, should be for their use. It is, therefore, a mistake to regard the purchase price as the only consideration for the note. It had other and ample considerations. 58 Conn., 473. The looms could only be properly regarded as entering into its consideration in the event of its being paid in full. If it were not paid in full, and the looms were taken back, the use of them would bear the same relation to the note as the machinery itself would in case of full payment. The plaintiff has never claimed a right to the note in full and the looms besides, but a right to demand and enforce, so far as possible, payment of the note, and apply, *per contract*, all received, if less than the whole, for their use. For the vendee's default of its undertaking by this agreement the vendor had—1. The ordinary remedies of the law.—2. The additional remedy contracted for in the bond. The second, until resorted to, could be in no sense specific or exclusive, but *independent*, *collateral* and

*cumulative.* The only restriction upon either was that of the contract, which only made it necessary for the plaintiff, in order to make both remedies operative and effectual, to resort to them in the order that she has. As the taking of possession of the machinery was not the plaintiff's only remedy, any proceedings, taken by her in pursuance of other remedies and not resulting in full payment, could not bar her other additional and independent remedy provided by the contract. Even if judgment had been obtained in the suit on the note, it would not, until payment of the judgment, bar the other remedy. *Drake* v. *Mitchell,* 3 East, 251; *Lord* v. *Bigelow,* 124 Mass., 185, 189; *Vanuxem* v. *Burr,* 151 id., 386.

3. Contracts of conditional sale that are terminated by the vendee's default. There is a class of cases in which the contract, either expressly or by legal implication, has provided that the default of the vendee shall *ipso facto* rescind or terminate it. In all such cases, the agreement being at an end, the courts have correctly held that the vendee, after his own default, was not liable upon his contract obligations, and that the vendor's *only* remedy was to retake the property. The following cases all arose on contracts of this kind: *Hine* v. *Roberts,* 48 Conn., 267; *Loomis* v. *Bragg,* 50 id., 228; *Bailey* v. *Hervey,* 135 Mass., 172. In *Hine* v. *Roberts* the words of the agreement were: "If I fail to pay any of said rent when due * * * all my rights herein shall *expire* and *terminate.*" In *Loomis* v. *Bragg* the contract construed by the court was of the same type, and on page 231, PARK, J., in his opinion says:—"The defendant failed to perform the contract. He made default of payment after having paid a number of instalments. The contract provides for this contingency, by a forfeiture of *all the defendant's rights under the contract* and of the sums of money that had been paid." In *Beach's Appeal,* 58 Conn., 475, Judge LOOMIS has referred to both these cases as "based upon a construction of those contracts, whereby it was expressly provided that the vendee's default of payment should work a forfeiture of their entire interest in the property," and

has clearly pointed out a marked distinction between those contracts and this one. In *Bailey* v. *Hervey*, the language of the agreement was explicit, and read:—"I further agree that if any default be made in the payment of the rent or any part thereof as above specified, or if any default be made in the performance of any of the agreements herein contained, my right to hold or retain said property or any part thereof shall *wholly cease and determine.*" It hardly need be said that the case at bar presents a very different type of executory conditional sale—a contract wherein there is *no* forfeiture and under which the vendee's breach of its obligations does not *ipso facto* cut off any of its rights or benefits.

4. Contracts of conditional sale that are not terminated by the vendee's default. There is another class of executory conditional sale agreements, whose chief distinction from those last considered consists in that they do not provide that the default of the vendee shall operate as a rescission of the contract. In this class of contracts all the rights of the vendee survive his default. His breach or failure to perform does not *ipso facto* work a forfeiture or terminate his interest in the agreement. All his rights to obtain the property bargained for, pursuant to the terms of the contract, continue unimpaired until those rights have been barred by some act or proceeding, provided for in the agreement or supplied by the law, and retaking the property is *not* the vendor's *only* remedy. In illustration of this kind of agreement we refer to the late cases of *Tafts* v. *D'Arcambal*, 48 N. W. R. 497; *Dederick* v. *Wolfe*, 68 Miss., 502; *Harkness* v. *Russell*, 118 U. S. R., 663. The case of *Bailey* v. *Hervey*, 135 Mass., 172, which is cited against our position, seems to have been misunderstood. The parties there provided in plain language that the vendee's default should *ipso facto* terminate all his interest in the subject matter of the contract, and, therefore, after such default, the *only* remedy of the vendor, as in *Hine* v. *Roberts* and *Loomis* v. *Bragg*, was to take back the property. The agreement in its essentials was like that in *Hine* v. *Roberts*, and very *un-*

like that in this case. We submit that the rule of law
which the Massachusetts court seems to have applied to the
case could not upon the decisions of this court in the cases
mentioned have had any proper application, and that the
case was based upon an agreement so different from the
one here as to preclude it from being of any value as a pre-
cedent. The doctrine of election of remedies was not pro-
perly applicable to the contract in that case. This principle
is necessarily restricted to such facts as give a party two or
more remedies, while the contract in that case with its sur-
rounding circumstances, by the law of *Loomis* v. *Bragg* and
*Hine* v. *Roberts*, confined the vendor to a *single* remedy,
and that the recovery of the property. Under the settled
law of this state, as declared in those cases, the rule of law
invoked by Allen, J., was clearly a misfit, and the view
assumed by him of the vendor's remedies erroneous, for the
vendor on the facts of the case had no right to any election
of remedies. To follow *Bailey* v. *Hervey* is, therefore, to
overrule our own cases. That case at best is of doubtful
authority, and for these reasons:—(*a.*) Because the five
judges making up the court were divided, and if they stood
three to two, the judge of the lower court having decided
for the defendants, the case would have been so evenly
balanced as to be hardly decisive of any important principle.
(*b.*) Because of the implied doubt in the position assumed
by Allen, J., in his opinion. He does not affirm that the
vendors had two remedies, but says "*If it be assumed that
they had,* " etc.; his whole argument being based on a con-
ditional rather than an affirmative statement. (*c.*) Because
the assumption on which the opinion is conditioned is di-
rectly negatived by the law of this court as declared in
*Loomis* v. *Bragg*, a decision not then published and doubt-
less unknown to that court. In *Beach's Appeal* this court
has clearly demonstrated our contract to be so unlike the
one considered in *Hine* v. *Roberts* as to bar the court's con-
struction of that from governing the interpretation of this;
and we therefore say, with the greatest confidence, that the
contract in this Massachusetts case was so different from

ours as to prevent the decision in that from being of any value as a precedent in this.

6. This is not a case of election of remedies. This doctrine cannot apply to the contract in the case at bar for the following reasons: (1.) Because the different remedies are not in any legal sense antagonistic or inconsistent. (2.) Because the remedies provided by the law and the agreement of the parties are cumulative and collateral. (3.) Because the only possible view of the transaction on which the application of this rule could be claimed, would be one that regarded the machinery as the consideration of the note, and that view is clearly untenable, as this court held in *Beach's Appeal*.

7. The plaintiff is entitled to possession of the looms under every possible view of the transaction. It matters not whether the agreement be regarded as an executory contract of conditional sale, or whether, like the contracts referred to in *Heryford* v. *Davis*, 102 U. S. R., 235, and *Chicago Equipment Co.* v. *Merchants' Bank*, 136 id., 268, it be construed as in effect a short form of chattel mortgage, or as, in *Ober* v. *Gallager*, 93 U. S. R., 199, the language be held to create a lien in the vendor. In every possible construction which may be put upon it, the title to the machinery is to remain in the vendor until payment of the note in full; and the reservation of the title, for any purpose, is enough to entitle the vendor to maintain replevin.

8. Our views of this case are fully sustained by two decisions of the Supreme Court of Vermont. *Child* v. *Allen*, 33 Verm., 476, and *Matthews* v. *Lucia*, 55 id., 308. In the latter case Lucia had sold a wagon to Matthews, on terms stated in the following writing given by him to Lucia: " For value received I promise to pay Frank Lucia or order eighty-five dollars, as follows: Ten dollars in cash on receipt of wagon, thirteen dollars in lumber on receipt of wagon, and sixty-two dollars in lumber delivered in Middlebury village on the first day of August, 1879. This note is given for a wagon I have this day purchased of the said Lucia, and the said wagon is to be and remain the pro-

perty of the said Lucia until fully paid ; and, if not paid as above, the said Lucia may take the wagon without let or hindrance and I forfeit all I have paid." A sum remained due upon the note and Lucia in a suit for it attached the wagon. Matthews then sued Lucia in trover and trespass for taking the wagon on the attachment. Lucia continued to hold the wagon by virtue of his attachment until a trial of the trover and trespass suit was begun, when he entered a nonsuit, retained the wagon, and claimed to hold it under the written contract. The Supreme Court in its opinion says :—" The attachment of the wagon on the writ in said suit was not a waiver of the defendant's right to the wagon under the conditional sale, nor an estoppel against his afterwards asserting that right in the manner he did. *Child* v. *Allen,* 33 Verm., 476." These decisions were not by a divided court, like *Bailey* v. *Hervey ;* they were not in violation of any contract rights of the parties; they do not, like the claim of the defendant here, savor of repudiation ; they emphatically negative the theory that suit for a debt will *ipso facto* make a conditional sale an absolute one; and are authorities justly entitled to be regarded by this court as controlling.

*H. C. Robinson* and *L. F. Robinson,* for the appellee.

FENN, J. The present contention grows out of the same contract which was considered by the court in *Beach's Appeal from Commissioners,* 58 Conn., 464, and the facts therein stated are applicable to this case, but need not be repeated here. Under the authority of that decision the plaintiff, as administratrix of George Crompton, having secured a dividend of twenty-five per cent from the insolvent estate of the Home Woolen Mills Company, brought the present action of replevin for the property against the defendant, who is the trustee in insolvency of said company ; and the sole question for our decision is the one considered, but not determined, by the court in the former case, whether the vendor, having elected to enforce the claim upon the

note, could at the same time retain the right to retake the machinery if the note was not fully paid. The Superior Court held that such right could not be retained, and rendered judgment in favor of the defendant for the return of the property, with damages for the replevin and detention, and the plaintiff appealed.

The contract appears in full in the former case, (58 Conn., 465), but we will repeat the closing paragraph, which is, that, upon default, the vendor "shall have the right, at any time, to resume possession of the machinery, and to enter the premises and remove the same as his own property; and if any portion of said note, or renewals thereof, shall remain unpaid, when possession shall be so taken by the party of the first part or his authorized agent, then the amount which may have been paid shall be for the use of said machinery while in possession of the party of the second part, and said note shall then be cancelled and given up." It is the present claim of the plaintiff that, although by reason of the express stipulation, after possession had been resumed, no further right to recover the purchase price would exist, yet by resorting to her remedies in the order in fact taken, both the remedy by collection and that by resumption were open to her. The argument in favor of such claim appears to be three-fold :—First, that the default of the vendee did not operate as a rescission of the contract; that the rights of the vendor survived such default; and that the rights of the parties thereafter existing were to be determined, not alone by the ordinary methods furnished by the law, but by those and such other proceedings as were expressly provided in the agreement itself, namely, that until the vendor exercised his right to resume possession, " the amount which might have been paid should be for the use of the machinery." Second, that in this case the remedies provided by the law and the agreement of the parties are cumulative and collateral, and that each, except as limited in their order by the contract, might be pursued independently, until full satisfaction resulted. Third, that the vendor had, under the contract, a lien upon the pro-

perty, which was in effect a mortgage, and was entitled to the same relief as if the title had been transferred and reconveyed for security. We will consider each of these claims separately. In reference to the first, that the default of the vendee did not operate as a rescission of the contract, it is true, and constitutes the basis of the decision in the former case of *Beach's Appeal.* But it must be manifest to any one who examines that case, that this court did not then attribute to such facts the consequences which the plaintiff now asserts. Indeed, it is very evident that while leaving the question now at issue in form undecided, the mind of both the majority and minority of the court was strongly opposed to the plaintiff's present position. This the plaintiff concedes, and a considerable portion of the brief presented in her behalf, and of the oral arguments based thereon, was devoted to an effort to explain how this court was led into its "apparent error," which error is said to have consisted in "presuming that the case of *Bailey* v. *Hervey et al.*," (135 Mass. 172, cited 58 Conn., 480,) "was based on a contract similar, in effect, to the one under consideration," and therefore, as Judge LOOMIS said in the former opinion, "directly in point." The plaintiff says that, in fact, the contract in *Bailey* v. *Hervey et al.* differed from the one now under consideration, and was, in effect, the same as in *Hine* v. *Roberts*, 48 Conn., 267, followed by *Loomis* v. *Bragg*, 50 Conn., 228, in which the vendor's only remedy was held by this court to be the retaking of the property. To demonstrate this, since it does not appear in the reported case, the plaintiff's counsel have been at the exceptional pains of procuring what is stated to be an exact copy of the actual contract construed in *Bailey* v. *Hervey et al.*, and has caused the same to be printed in full for our examination at the end of their brief. The argument is, that such contract would not have been construed in Connecticut as it was in Massachusetts, as conferring an option upon the vendor; that the assumption on which the opinion is conditioned is directly negatived by the law of this court as declared in *Loomis* v. *Bragg*, "a decision not

then published, and doubtless unknown to Justice ALLEN;" and that therefore the case is erroneous, and should have been decided upon other and better grounds, by which the same result might have been reached, and should not have been recognized as an authority by this court. Conceding this, for argument's sake only, we fail to see how it in any wise affects what Judge LOOMIS declares to be "the clear and cogent reasoning contained in the opinion cited," for the Massachusetts court, having, whether correctly or otherwise, held that the contract was one which did vest an option in the vendor, and was therefore similar to that now before us, the correctness and force of the reasoning upon the premises assumed does not depend in the least upon the truth of the premises themselves. Nor is this court concerned to discover the fidelity to principle, in all its parts, of the case cited from another jurisdiction, but contents itself with so much of the logic of the case as applies clearly and with force to our own. The court there said, in discussing a contract which it at least considered and held to be similar in effect to what we have determined the one before us to be :—" When the plaintiff discontinued his payments on account, what was the legal position of the defendants? If it be assumed that they might, at their option, either retain the goods as their own property, without any obligation to account for the proceeds or value to the plaintiff, or that they might collect the price in full, it is plain that they were not entitled to do both. They could not treat the transaction as a valid sale and an invalid one at the same time. If they reclaimed their property, it must be on the ground that they elected to treat the transaction as no sale. If they brought an action for the price, they would thereby affirm it as a sale. Two inconsistent courses being open to them, they must elect which they would pursue, and, electing one, they are debarred from the other. Reclaiming the goods would show an election to forego the right to recover the price. But, instead of reclaiming the goods in the first instance, they brought an action against Bailey for the price, made an attachment of his property by

trustee process, and entered their action in court, and he was defaulted." As Judge LOOMIS has aptly said, "to accept this as good law would be to establish a principle which would, upon the facts found, preclude the appellee from hereafter reclaiming the machinery in question." We do so accept it, because it commends itself to our judgment, and so clearly does this appear that, although, as Judge LOOMIS further adds, we "are aware that it may receive further support from other decisions to the same effect," we deem their citation uncalled for.

The plaintiff, however, says that she did not exercise any option until she resumed possession; that the provisions of the contract that the amount paid should be for the use of the machinery, applies equally whether such payment, prior to such resumption, was by the voluntary act of the vendee or was coerced by the legal action of the vendor. This claim is, we think, not only opposed to the reasoning which we have quoted and approved, but requires for its support a construction of the contract which must be based upon a presumed intention of the parties, which is neither found expressed in the language of the instrument nor can be conceived of as existing in the mind of its makers. The only thing which, in case of the vendee's default, the contract expressly provides for, is the right of the vendor to retake the property, which is to operate as a discharge of the note. And although we have held that the vendor had the option to enforce payment instead, it cannot reasonably be supposed that the parties ever intended that the vendor, through the exercise of an option not expressly given, could by reversal of the order of procedure, instead of retaking the property and cancelling the note, collect the note and then retake the property. Cases cited by the plaintiff's counsel, which hold that when the option is exercised by retaking the amount already voluntarily paid may be retained and cannot be recovered back by the vendee, are not in point. These are payments made by the vendee in affirmance of a contract which it does not lie in his power to disaffirm, and while the contract remains in force and when

the vendor makes default, and it thereby becomes the right of the vendor to elect whether he will affirm or disaffirm, if he does the latter, under a contract similar to the present, the vendor is under no obligation to return to the vendee what he has paid in part performance of a contract which it was his fault that he did not perform altogether. But while voluntary payments are made by the vendee in affirmance of the contract, involuntary ones can only be coerced after default, and import a like affirmance on the part of the vendor, because upon such default, it being the right of the vendor to elect whether he will affirm or disaffirm, though it may be true that he might defer such election for a considerable time, yet, whenever he brings an action to recover the contract price, he does affirm it, just as much as he disaffirms it when he retakes the property. To say, therefore, that the vendor's option, in the case before us, was not exercised until the retaking, is erroneous. It involves a double election—to affirm the sale to get as much as possible out of the general assets of the insolvent estate, and then to rescind it to get as much more as possible out of the property specifically, which seems to us, it must be said, a fast and loose fingering of the contract. The plaintiff insists that there is no injustice in this, since she only seeks to obtain the amount of the purchase price of the property, and cannot get more ; that whenever the sum collected equals the debt, the property vests in the vendee, and whenever such sum less than the debt is enough to make the balance due below the value of the property, the vendee can obtain title by paying the remainder. There seems to be an inconsistency in this reasoning. If not only what is voluntarily paid, (in this case nothing was in fact so paid,) but what she collects, may be held as rent, why is the plaintiff under any obligation to apply it as part payment upon the note ? When she retakes the property it is her duty under the contract to cancel and give up the note. But the note being discharged, is she thereupon to return the property ? If the sum received is rent merely, why does not the whole purchase price continue due ? If, on the other

hand, she is bound to apply it in part payment, why is it not because she has elected to treat the obligation as absolute and not as conditional? We think the plaintiff is mistaken in her claim.

Coming, then, to the second point in the plaintiff's argument, that the law and the agreement taken together, give to her cumulative remedies, which she is entitled to pursue separately until they result in satisfaction, the answer to this claim appears to be clearly embraced in what has already been said. This is not a question of remedy, but of right. The contract was conditional. The note should be paid or the property might be retaken. There was an option. True, this court has held that such option belonged to the vendor and not to the vendee. The debt was absolute if the vendor elected to treat it as such. The plaintiff's intestate, or she as his administratrix, might therefore, upon the vendee's default, demand and enforce either payment or return. If the latter, that by the express terms of the instrument enured to discharge the note. If the former, that equally, though by operation of law, transferred and confirmed the title. Having elected, therefore, to enforce the note, the plaintiff is entitled to all the remedies which the law, or the contract, gives her for that purpose, but not for any other purpose. She could attach the property. She did in fact attach other property. Insolvency intervening, the claim was presented and the dividend received. What other remedy for the enforcement of the debt exists? Not now to retake the property as a means to that end. A contract of conditional sale imposes no lien upon property in favor of the vendor, for that or any other purpose. He does not sell and receive back a pledge. He retains the title until he elects to part with it, and when he does so elect the title passes from him; but nothing else thereby springs up in its place in the nature of a lien or encumbrance upon the property, enuring to his benefit.

And this brings us directly to the remaining claim of the plaintiff, that the contract in question is in the nature of a mortgage. It is not a mortgage. If it had been, it must,

in order to be valid, have been executed with statutory formalities, which are lacking, and recorded. It would require foreclosure to perfect title, and it ought to have been considered by the commissioners on the insolvent estate as security for the plaintiff's claim upon the property of such estate, which was not done. It is not, therefore, claimed to be a mortgage, but that it was in the nature of a mortgage. We think, however, that it is just as far from the nature of a mortgage as any other conditional sale; no more and no less; and that to hold that between conditional sales, a class of contracts so often construed and so clearly defined in this state, and chattel mortgages proper, there is an intermediate and anomalous species of contracts, which the court will regard as importing in favor of a vendor all the benefits of both a mortgage and a conditional sale, and against the vendee, the trustee for the benefit of creditors of the vendee's insolvent estate and the public generally, to whom such unrecorded and undisclosed conveyances operate too often disadvantageously, all—the burdens of both, with none of the advantages of either, would be opposed to public policy and cannot be and is not law.

There is no error in the judgment complained of.

In this opinion the other judges concurred.