282 So.2d 14 (1973)
Anita N. EBAUGH, Appellant,
v.
F. Christian EBAUGH, Appellee.
No. 72-380.
District Court of Appeal of Florida, Fourth District.
July 31, 1973.
Rehearing Denied September 10, 1973.
D. Arthur Yergey, of Yergey & Yergey, Orlando, for appellant.
John V.A. Holmes, of Lovett, Kreuter & Holmes, Orlando, for appellee.
PER CURIAM.
From time immemorial the controlling consideration in awarding custody has been, is, and hopefully will continue to be the welfare of the child. 10A Fla.Jur. Dissolution of Marriage, Sec. 88; Section 61.13(2), Florida Statutes, F.S.A. It is the best interests of the child and not the rights of the parents that are of paramount importance. Rudolph v. Rudolph, Fla. App. 1962, 146 So.2d 397; see also Blue v. Blue, Fla. 1953, 66 So.2d 228. Where the record reflects the existence of competent substantial evidence to support the chancellor's determination that the interests of the child would best be served by placing the custody of the child with one parent as opposed to the other, it is the duty of the appellant court to uphold such determination notwithstanding that the appellate court might have decided the issue of custody differently. Tagliarini v. Tagliarini, Fla. App. 1968, 213 So.2d 10. The record in the case sub judice reflects that the chancellor's order is supported by competent substantial evidence and the appellant has failed to demonstrate that such order is *15 clearly erroneous. Accordingly, the final judgment must be
Affirmed.
CROSS and MAGER, JJ., concur.
WALDEN, J., dissents, with opinion.
WALDEN, Judge (dissenting):
This is a post judgment transfer of custody of a male child (born in October 1968) from the mother to the father. I would reverse based on abuse of discretion and direct the return of the boy to his mother. The trial court decision was in nowise supported or justified by the facts.
The parties, young in age, were divorced in September 1969 and the judgment approved and ratified a child custody agreement which had been executed by the parties. The agreement specifically provided, "1. Wife is a fit and proper person to have custody of the minor child born issue of this marriage, to-wit  Michael Nevin Ebaugh * * *," and thus custody was awarded to the wife.
In December 1971 the husband filed a motion to modify custody which was patently inadequate in that it set forth no ultimate facts or basis reflecting a substantial and material change in circumstances as concerns the child's welfare. 10A Fla.Jur., Dissolution of Marriage, Separation and Annulment, §§ 337 & 342.
The petition by way of conclusion opined that the husband was fit, the wife was unfit, and the best interests of the child required a change. The gravamen and only pleading basis alleged was the following which is a head scratcher, at least to this judicial reader:
"3. When the original separation and child custody agreement was entered between the parties, the Defendant agreed that the Plaintiff was a fit and proper person to have the custody of their minor child. At that time, the Defendant believed that to be true, but he did not really know and could not determine at that time whether it was true or not because the Plaintiff had but recently become a mother, because the child was still an infant requiring specialized care but little attention, and because, never having observed the plaintiff function alone as a mother, he could not be sure that she could so function on her own."
Sifting through the custody order, seeking the basis for the decision, it is noted by way of actual findings that the husband has remarried. The wife has purchased a home, hasn't remarried but is considering a marriage proposal. Although the psychiatrist felt that each parent was fit, the trial judge felt the wife was somewhat psychotic. However, the fairest synopsis is that the trial court was offended by the wife's sexual conduct following divorce and that such was the basis for his decision, and the order so related.
Excerpted:
"On the negative side, and the most questionable as it affects her fitness, is the history of many and varied illicit love affairs that Mrs. Ebaugh had during 1971. On many occasions, and for substantial periods of time she left her son with Mr. Ebaugh to go out of town with different men. She has had different men spend the night in her home. Although there is no evidence that she had sexual intercourse in the presence of the child, some gentlemen friends spent the night in her home while the child was there.
"There is also evidence of involvement by Mr. Ebaugh in sexual affairs before his marriage. There is no evidence of this being done in his home while the child was present. His present wife did stay and assist him in the care of his son when the boy was sick last summer.
* * * * * *
"The Court finds that F. Christian Ebaugh is fit to look after the child. *16 The Court finds that Mrs. Ebaugh's multiple affairs with men constitutes a substantial change in circumstances warranting a transfer in custody. The Court finds that the welfare of Michael Nevin Ebaugh dictates a transfer of custody from Anita N. Ebaugh to F. Christian Ebaugh." (Emphasis supplied.)
Looking now to the record proper, it can be simply said that the trial court finding that the wife was psychotic is without foundation and it is not seriously contended otherwise by the husband.
The child's condition, outlook and demeanor had improved since divorce.
Now as to sex, two men who had sought to marry the mother had sexual relations with her after her divorce. The husband, himself, who now complains, admitted that he had sexual relations with his former wife on numerous occasions since the divorce and had, in fact, lived with her as husband and wife with the child present for a period of time when there was no legal relationship between them. Two men, on separate occasions, did spend the night with the wife while the child was in the same building, but not in proximity. As the trial court recorded, there is no evidence that the child was present or witnessed any sexual incidents. The husband, here again the complainant, admitted, if this is to be the quid pro quod, that he spent the night with his present, or current, wife prior to their marriage while the child was present as he had with his former wife. Furthermore, he and his former wife and the child made an overnight trip out of the state during which time he, though not married to her, lived with her as husband and wife. Thus, the finding of "many and varied illicit love affairs" and other such adjectives such as "multiple" affairs are not truly representative, inasmuch as, other than her former husband, they can only refer to two men who had proposed marriage.
Cutting this short, assuming that sex acts between unmarried adults is "wrong", as did the trial court, I feel that the litigants here are equally guilty and thus, under the circumstances, the husband is not to be preferred over the wife. Next, the record is devoid of any showing that the mother's sexual conduct was so wanton or depraved as to render her unfit and there is no showing that such in anywise affected or had any bearing on the child's welfare. Patently, there has not been that change of circumstances as would warrant the transfer of custody. Ritsi v. Ritsi, Fla.App. 1964, 160 So.2d 159; Smith v. Smith, Fla.App. 1968, 212 So.2d 117.
A citizen's life style and views as to proper or acceptable sexual conduct vary from person to person, usually as a matter of private conviction. While, of course, some would find the mother's conduct here objectionable, it is my view that it was not of such character or magnitude as would justify the court's punishing her by taking away her son and thereby upholding its standard of propriety, Doran v. Doran, Fla.App. 1968, 212 So.2d 100; Gedney v. Gedney, Fla. 1934, 117 Fla. 686, 158 So. 288. Further, I fail to see in these days of equality why there should be a double standard applied as between this man and this woman as to sexual conduct.
Current mores and ideas of civil liberty and freedom of expression being what they are, it will come as a traumatic shock to young divorcees to find that their engagement in a sexual affair  even when done discreetly and out of the presence of their child or children  will disqualify them as a parent and cause loss of custody, and this even where the former husband is equally guilty and has even been her most frequent post judgment partner.
I would reverse and direct the return of custody to the mother.

* * * * * *
And now to the lately conceived platitudinous notion of the majority that somehow the child's welfare is in jeopardy and such justifies the modification and transfer of custody. Of course, a child's welfare is what it's all about in custody cases. However, *17 the term is not mystical and self effectuating  it is not some kind of open sesame. Essentially involved are matters of pleading, res judicata, notice, evidence, and finally and hopefully, a modicum of common sense.
In my opinion, the employment of this phrase here reflects a cop-out, a disinclination to meet the appellate issue. The whole core of the trial court proceeding has to do with the wife's fitness and sexual conduct. Indeed, the merest reference to the appealed order reveals that the reason for the modification was the wife's "... history of many and varied illicit love affairs... ." and "[t]he Court finds that Mrs. Ebaugh's multiple affairs with men constitutes a substantial change in circumstances warranting a transfer in custody."
While not saying so in so many words, apparently neither the husband nor the majority can defend the trial court approach and finding and, hence, albeit lamely, seek another basis to support the appealed decision.
The wife frames the appellate questions as follows:
1. "Can the lower court base a change of the custody provisions of a final judgment of divorce upon the court's `reaction and observations' when the same are not found in any sworn testimony elicited at trial."
2. "Can a finding of `multiple affairs' by a mother after her divorce not committed in the presence of the children in and of itself constitute a substantial change of circumstance warranting a transfer of custody from her to the father under Florida law when it is affirmatively shown that the selfsame father during the same period of time, had like affairs with women including his former wife with the child present."
3. "Can the court base a portion of a change of custody upon the `welfare' of a child when there is no testimony in the record to show that the child is being either mistreated or improperly cared for, and there is no finding that the mother is `unfit.'"
The husband disdains, or dodges, these questions and frames his approach as follows:
Whether the record on appeal contains substantial competent evidence to support the order appealed from.
Indicative of the husband's unwillingness to come to grips with the appealed order are these excerpts:
"In the present case, the Appellant attacks certain specific comments and findings contained in the trial court's final order. The question presented on appeal is not whether the trial court's comments and findings are 100% warranted, but whether the record contains substantial competent evidence upon which the trial court could find a change of condition since the entry of the final decree, or material facts bearing upon the issue of custody existing at the time of the decree, and that the welfare of the child involved required a change of custody. `Although it is always helpful for the trial court to give its reasons for its rulings, and its reasons may be considered by the Appellate Court in reviewing a case on appeal, the ultimate question for the Appellate Court is whether the trial court has arrived at a correct conclusion. The process of reasoning by which a trial court reaches its conclusion is not regarded as the controlling factor in entering a reversal or affirmance. The court should therefor affirm rather than reverse the judgment or decree if the result is correct, even though the trial court judge states erroneous reasons for reaching his decision.' Florida Jurisprudence, Appeals, § 297."
"In its final order the trial court did find that the mother's `multiple affairs with men constituted a substantial *18 change in circumstances warranting a transfer of custody.' (Appellee's Appendix: 5) The record certainly supports the trial court's conclusion that the mother had been involved in multiple affairs, but the question on this appeal is not whether that particular conclusion constitutes a sufficient change of circumstances to warrant a change of custody but whether the record, as a whole, contains substantial evidence of that and other changes of circumstances or newly discovered facts warranting a change of custody. It is the Appellee's position, naturally, that all of the necessary conditions for a change of custody are amply supported by substantial and competent evidence in the record."
In similar manner the majority opinion chooses to ignore the trial court findings and stated basis for modification.
And so what is the situation with reference to the child's welfare? In my judgment the reference to it in the order of modification, having read the whole transcript, is only secondary and peripheral, i.e., if the mother's sexual conduct was unacceptable as the trial court specifically found, it necessarily followed that such would have an unfavorable reaction upon the child's welfare.
Back to basics, the strong and unquestioned rule on modification of custody is that, while the welfare of the child is of paramount concern, the final award of custody, being res judicata of all matters involved at the time of the decree or judgment, can not be modified to change the custody except upon a showing of a substantial change of circumstances. See 10A Fla.Jur., Dissolution of Marriage, etc., § 330, et seq. Furthermore, "a final decree should not be amended to take away legal custody or visitation rights, or any substantial change made therein, except on the usual and ordinary procedure of pleading, including an allegation or statement of the basis of the claim for the change by the parties seeking it, and an opportunity to directly answer the same and raise issue thereon so that the parties may know that their evidence is being directed to or with reference to that issue, and in order that a record may be made for the benefit of a reviewing court if review should be sought." Id. at § 337. (Emphasis supplied.)
With this, a scan of the husband's petition to modify reveals that it is utterly and totally insufficient as it shows no ultimate facts or otherwise reflecting a substantial change of circumstances which would jeopardize the child's welfare.
Without detailing, various experts testified. Dr. Gutman testified that both parents were fit and competent and expressed a preference for the father, because, in comparison, he was warmer and more affectionate. Dr. Silverstein testified the father was fit and did not discuss the mother whom he had not examined. Dr. Peisner testified that both were fit. The main thrust and effort of the foregoing was directed to the relative fitness of the parents, a matter thought not significant by the majority.
How about the child and its progress and welfare? Dr. Bunn, the child's pediatrician since birth, testified:
"Q Did he develop as we say in the accurate term, normally from October `69, to 
"A (Interposing) I feel that he has, his growth has been satisfactory. He has shown a more normal relationship to people on the times that I have seen him.
"Q Has his relationship from what you observed improved since October `69, or gone the other way?
"A It has improved since then. In fact, it improved by the time he was discharged from the hospital."
Clearly the mother was adjudicated as fit at the time of the divorce and is still *19 fit. The child has in fact improved in his condition during the period since the divorce. At best, or worst depending on viewpoint, and disregarding the law as set forth, one expert now opined he would prefer the father over the mother for custody purposes, simply because of personality traits  but that both parents were fit and competent.
To conclude, there is no pleading basis, evidentiary basis, or legal basis for determining there has been a substantial change in circumstances, either as to the child's welfare or fitness of the parent so as to justify custody modification.
I would still reverse and direct the return of custody to the mother.

ON MOTION FOR REHEARING
Ordered that appellant's motion for Rehearing, filed August 13, 1973, is hereby stricken as violating Rule 3.14(b) F.A.R., 32 F.S.A.