Joyce **SHIRLEY, Plaintiff-Appellant,**

v.

**STATE NATIONAL BANK OF CONNECTICUT, Defendant-Appellee.**

**No. 222, Docket 73–1783.**

United States Court of Appeals, Second Circuit.

Argued Dec. 10, 1973.

Decided Feb. 14, 1974.

Neal Ossen, Hartford, Conn. (Mary R. Hennessey, Robert Dombroff, Hartford, Conn., on the brief), for plaintiff-appellant.

Francis J. McNamara, Jr., Stamford, Conn. (John F. Spindler, Robert W. Worley, Jr., Fredric H. Weisberg, and Cummings & Lockwood, Stamford, Conn., on the brief), for defendant-appellee.

Before KAUFMAN, Chief Judge, and MANSFIELD and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the District of Connecticut, Hon. Jon O. Newman, Judge, granting defendant's motion to dismiss the complaint for failure to state a claim pursuant to 42 U.S. C. § 1983 upon which relief can be granted. We agree with the district court that the alleged conduct does not constitute state action and therefore affirm.

The plaintiff, Joyce Shirley, commenced this action on September 12, 1972, seeking money damages, as well as a judgment declaring the Connecticut Retail Instalment Sales Financing Act, Conn.Gen.Stat.Rev. § 42–83 et seq., and, in particular, section 42–98, unconstitutional. Section 42–98 provides that upon default by a purchaser under a retail instalment contract, the holder of the contract may repossess the goods without the requirements of any prior hearing or of notice to the purchaser, if the contract expressly makes the default a ground for retaking the property.

The complaint alleged that on or about October 7, 1971, the plaintiff entered into a contract of conditional sale with Hart Volkswagen Corp. of West Hartford for the purchase of a Ford Thunderbird. The contract provided for 24 monthly instalment payments by the plaintiff starting on November 1, 1971. In the contract, plaintiff acknowledged receipt of an exact copy of the completed and executed instrument. The contract on its face warned the buyer not to sign if there were any blank spaces and advised the purchaser that she had the right to pay in advance the full amount due and to obtain a partial refund of the finance charge. The contract further advised that the purchaser had the right to redeem the property if it was repossessed for default, as well as the right to require, under certain conditions, a resale of the property. The contract defined defaults, which included the failure to pay any part of the purchase price when due. The plaintiff agreed to return the automobile in the event of default and fur-

ther acknowledged the right of the seller in such event, with or without previous notice, to repossess the vehicle. On or about October 7, 1971, the seller assigned the conditional sales contract to the defendant bank, State National Bank of Connecticut. After seven instalments, the plaintiff defaulted and made no payments for June, July or August, 1972. On or about August 23, 1972, the defendant repossessed the automobile.

On November 30, 1972, the defendant moved to dismiss the complaint for failure to state a claim pursuant to 42 U.S.C. § 1983 upon which relief could be granted and for lack of subject matter jurisdiction under 28 U.S.C. § 1343. On April 2, 1973, Judge Newman, having heard the parties, dismissed the complaint on the former ground, finding "no action under color of state law." On April 3, 1973, the judgment appealed from was entered.

■ The initial, and here the key question is whether or not the defendant Bank's peaceful repossession of the plaintiff's automobile on August 23, 1972, constitutes "state action" so as to support a claim under 42 U.S.C. § 1983. Since the Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed.2d 835 (1883), it has been recognized that the Fourteenth Amendment applies only to actions of the "States" and not to actions which are "private." The "under color of state law" provision in section 1983 is equivalent to the state action requirement of the Fourteenth Amendment. Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 n. 7, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States v. Price, 383 U.S. 787, 794–795 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).

The existence of state action appears significantly in prejudgment seizures where a state official participates in the action which is the subject of complaint. Thus, in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), a court clerk's *ex parte* issuance of a summons, pursuant to a Wisconsin statute authorizing prejudgment garnishment of wages, provided a sufficient intrusion of the State to constitute state action. In Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972), state statutes authorized creditors to initiate replevin procedures by summary writs issued by state courts and executed by state officials. The seizure complained of here, on the other hand, was by a private individual without the intrusion of state process or state officials.

■ Nevertheless, it is established that a private person may act under color of law. " 'To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.' United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)." Adickes v. S. H. Kress & Co., *supra* 398 U.S. at 152, 90 S.Ct. at 1606.

■ Has there been any joint activity between the State of Connecticut and the Bank in the repossession of the plaintiff's car? When the plaintiff purchased the Thunderbird on credit, she agreed to make monthly payments over a two-year period and on default agreed that the seller "may, with or without legal process, and with or without previous notice or demand for performance, enter any premises wherein the chattels may be, and take possession of the same . . . ." The plaintiff agreed in advance to the seizure of her vehicle. There was therefore no conspiracy between the defendant and the State of Connecticut, but rather a contract between the plaintiff and the defendant.

■ How then has the State of Connecticut become sufficiently implicated so that the seizure can be interpreted as state action? Plaintiff argues that Conn.Gen.Stat.Rev. § 42–98(a)[1] authorizes the retaking. But if the peaceful

---

1. Section 42–98(a) provides:
    When the retail buyer is in default in the payment of any sum due under the retail instalment contract or instalment loan

repossession of the chattel authorized by the contract is valid in any event, how does the statute constitute a state involvement? The first inquiry must be, whether, absent a state statute, a Connecticut creditor would have the self-help remedy complained of. There is no dispute but that under the common law of Connecticut, the right of peaceful repossession without a hearing was recognized.[2] See Sager v. Schmidt, 98 Conn. 736, 120 A. 504 (1923); Crompton v. Beach, 62 Conn. 25, 25 A. 446 (1892); Swift's Digest of Laws of Connecticut 376–77, 468–69 (Dutton & Cowdrey Rev.1864). The statute in Connecticut, therefore, does not create any right otherwise unavailable. But the appellant argues that there is more than codification here; Connecticut now has a detailed statutory scheme—the Retail Instalment Sales Financing Act—which displays a strong concern for consumer protection.[3] See Keyes v. Brown, 155 Conn. 469, 232 A.2d 486 (1967).

While Connecticut legislation unquestionably exists, we do not believe that this in any way constitutes such a significant state involvement as to constitute state action. The injury complained of here is the seizure of the plaintiff's car. Paragraph 5 of the complaint, entitled "Statement of Claim," alleges that the Act, "§ 42–83 et seq., and in particular § 42–98, enables creditors and their agents to obtain immediate possession of goods from those lawfully in possession thereof, without the requirement of any prior hearing or of notice to those in said lawful possession." But the statute did not authorize the seizure, as we have pointed out. Actually, the statute made the seizure more difficult. Since the passage of the Act, seizure can only be had if the seller has accorded the purchaser all of the protection set forth in the statute.[4] Thus, the State does not encourage seizure, nor does it in any way aid or abet the seller. The partnership, if any, is with the purchaser and

---

contract, or in the performance of any other condition which such contract requires him to perform, or in the performance of any promise, the breach of which is by such contract expressly made a ground for the retaking of the goods, the holder of the contract may retake possession thereof. Unless the goods can be retaken without breach of the peace, it shall be retaken by legal process, but nothing herein contained shall be construed to authorize a violation of the criminal law. In the case of repossession of any motor vehicle without the knowledge of the instalment buyer, the local police department shall be notified of such repossession immediately thereafter. In the absence of a local police department or if the local police department cannot be reached for notification, the state police shall be promptly notified of such repossession.

2. The right of a holder of a conditional sales contract to exercise self-help repossession had general recognition at common law. See McCall, The Past as Prologue: History of the Right to Repossess, 47 S.Cal.L.Rev. 58 (1973), tracing the history of self-help repossession back to Greek and Roman Law. The remedy existed even absent a contractual provision granting the right. L. Jones, The Law of Chattel Mortgages and Conditional Sales § 1337 (6th ed. R. Bowers 1933). The principal limitation on its exercise was that the property had to be retaken without a breach of the peace. W. Prosser, The Law of Torts § 22, at 119 (4th ed. 1971).

3. Thus section 42–84 of the Retail Instalment Sales Financing Act sets forth a number of provisions which must be included in all retail instalment contracts and which are clearly calculated to make the consumer a more knowledgeable purchaser and to provide him with contractual protections that would probably be otherwise unavailable because of his lack of bargaining power. Section 42–85 places limitations on finance charges where the sale involves a motor vehicle. Delinquency and finance charges are collectible only in accordance with section 42–91. Clauses providing for confession of judgment are void under section 42–88. Section 42–96 provides for prepayment and refunds of finance charges notwithstanding contrary contractual provisions. Finally, section 42–98 provides for extensive and restrictive regulation of the creditor upon default of the purchaser.

4. See generally note 3, *supra*. See also Keyes v. Brown, 155 Conn. 469, 232 A.2d 486 (1967), regarding non-compliance with the Act and sections 42–99 and 42–100 providing penalties for willful violations.

not the defendant. See Adickes v. S. H. Kress & Co., *supra*.

We see nothing in Coleman v. Wagner College, 429 F.2d 1120 (2d Cir. 1970), relied upon by appellant, contrary to our position here. In *Coleman*, the State of New York had moved into the field of private college disciplinary procedures and enacted legislation, one purpose of which was "to deter student disturbances by the clear announcement of rules of conduct and of the penalties for disobedience." 429 F.2d at 1126 (Friendly, J., concurring). It was the imposition of the disciplinary policy by the State which created the mischief complained of and allegedly constituted state action (a proposition not determined in that case). But here the State is not a "joint participant in the challenged activity." Burton v. Wilmington Parking Authority, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961). The state enactment was amelioratory not regressive; it did not "move in" on the plaintiff or other buyers, but rather on the instalment sellers.[5] See Fairfield Credit Corp. v. Donnelly, 158 Conn. 543, 264 A.2d 547 (1969), striking down waiver of defense clauses in consumer goods conditional sales contracts.

We are reduced then to the proposition that the mere fact that the State has legislated in the area of peaceful repossession constitutes sufficient participation to be appropriately denominated "state action." As Chief Judge Kaufman pointed out in Male v. Crossroads Associates, 469 F.2d 616, 621 (2d Cir. 1972): "Although the mere existence of a state or federal regulatory scheme standing alone with nothing more is not sufficient to bring those regulated within the scope of the Fourteenth Amendment, [see Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972)], the regulation and its extent must be considered in weighing the circumstances of each case." In *Crossroads*, we found that the State's "demonstrated intention to regulate the tenant selection procedures" (469 F.2d at 622), which there was the "challenged activity," constituted state action. But here the decision to repossess is entirely that of the seller; it is authorized by the agreement and the State, in our view, plays no significant role.

The point is made decisively in Moose Lodge No. 107 v. Irvis, *supra*, where the Pennsylvania Liquor Control Board, in licensing the Moose Lodge to serve liquor, subjected the private club to detailed and extensive state regulation. The Court there held that "[h]owever detailed this type of regulation may be in some particulars, it cannot be said to in any way foster or encourage racial discrimination. Nor can it be said to make the State in any realistic sense a partner or even a joint venturer in the club's enterprise." 407 U.S. at 176–177, 92 S.Ct. at 1973. As we have indicated, since peaceful repossession existed at common law in Connecticut, the mere codification of that right does not, in our view, constitute state action. No delegation of traditional state power has been granted to any private person.

5. We do not overlook Conn.Gen.Stat.Rev. § 14–181 (*which is identical to section 16 of* the Uniform Motor Vehicle Certificate of Title and Anti-Theft Act), relied upon by appellant as evidence of state action. That section requires that where a secured creditor transfers an automobile repossessed under a security agreement, either he or the transferee deliver to the Commissioner of Motor Vehicles the last certificate of title, an application for a new certificate, and an affidavit by the creditor that the vehicle was repossessed and that the interest of the owner was lawfully terminated. Aside from the fact that this section is not even mentioned in the complaint, it has nothing to do with the seizure which is the challenged activity here. It comes into play only after the seizure. The purpose of the statute is to protect innocent purchasers of motor vehicles, to protect the public by affording identification of vehicles and to keep records current. If this constitutes state action then the recording of all real property deeds and new motor car registrations would be the basis for Fourteenth Amendment state action subject to review in the federal courts. See Burke & Reber, State Action, Congressional Power and Creditors' Rights: An Essay on the Fourteenth Amendment, 47 S.Cal.L.Rev. 1, 19–23 (1973).

Most of the States have passed and continue to enact legislation codifying and defining the common law in the commercial law area. New York has a Law Revision Commission, for example, which is charged with this responsibility. Were the mere codification of common law sufficient to constitute significant state involvement, then, of course, the door to Fourteenth Amendment intrusion would be opened wide to continuing federal scrutiny. We find no support for this proposition in the precedents which bind us. On the contrary, the Connecticut statute under attack (section 42–98) is substantially the same as section 9–503 of the Uniform Commercial Code which permits peaceful repossession by a secured party upon default. The attack on this section of the Code has already been mounted, and the same authorities have been discussed and the same issues decided. The only federal courts of appeals which have faced the problem have failed to find the significant state action required. Bichel Optical Laboratories, Inc. v. Marquette Nat'l Bank, 487 F.2d 906 (8th Cir. 1973); Adams v. Southern Cal. First Nat'l Bank, 492 F.2d 324 (9th Cir. 1973). Moreover, the vast majority of state and federal district courts, where repossession of chattels by creditors has been challenged, have reached the same conclusion.[6]

The appellant here relies upon Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). That case involved an amendment to the California State Constitution, which barred the State from placing any limitation on the right of a person to dispose of his real property. The amendment, in effect, created a State Constitutional right to discriminate, repealing prior acts of the state legislature which had regulated racial discrimination in housing. The Supreme Court held that this effectively constituted state action which encouraged racial discrimination. The distinction is clear. The State of California by express Constitutional Amendment permitted what was formerly prohibited. Here the right to private repossession always existed. Codification did not encourage the practice one whit. As we have pointed out, the legislation made it less attractive by providing greater safeguards to the consumer in the conditional sales contract.

Although we believe that this sufficiently distinguishes Reitman, as the court noted in Adams v. Southern Cal. First Nat'l Bank, supra, at 333, "we are not convinced that the resolution of the state action question involving prejudgment self-help repossession of secured property is controlled by a case involving racial discrimination." Judge Friendly has also argued "that racial discrimination is so peculiarly offensive and was so much the prime target of the Fourteenth Amendment that a lesser degree of involvement may constitute

6. District court cases holding that self-help repossession is state action include: Boland v. Essex County Bank & Trust Co., 361 F. Supp. 917 (D.Mass.1973); James v. Pinnix, 4 CCH Sec.Tr.Guide ¶ 52,172 (S.D.Miss. 1973); Gibbs v. Titelman, 369 F.Supp. 38 (E.D.Pa.1973); Michel v. Rex-Noreco, Inc., 12 UCC Rep.Serv. 543 (D.Vt.1972). Representative of reported district court cases finding no state action are: Johnson v. Associates Finance, Inc., 365 F.Supp. 1380 (S.D.Ill. 1973); Nichols v. Tower Grove Bank, 362 F. Supp. 374 (E.D.Mo.1973); Shelton v. General Elec. Credit Corp., 359 F.Supp. 1079 (M. D.Ga.1973); Colvin v. Avco Fin. Serv., 12 UCC Rep.Serv. 25 (D.Utah 1973); Pease v. Havelock Nat'l Bank, 351 F.Supp. 118 (D. Neb.1972); Kirksey v. Theilig, 351 F.Supp.

727 (D.Colo.1972); Greene v. First Nat'l Exch. Bank, 348 F.Supp. 672 (W.D.Va. 1972); Oller v. Bank of America, 342 F. Supp. 21 (N.D.Cal.1972); McCormick v. First Nat'l Bank, 322 F.Supp. 604 (S.D.Fla. 1971). The two state supreme courts which have considered the question have also found an absence of state action. Northside Motors v. Brinkley, 282 So.2d 17 (Fla.1973); Brown v. United States Nat'l Bank, 509 P.2d 442 (Or.1973). See also Burke & Reber, State Action, Congressional Power and Creditors' Rights: An Essay on the Fourteenth Amendment, 47 S.Cal.L.Rev. 1, 8 n. 490 (1973), for a compilation of lower state court and unreported district court cases where the state action argument has been rejected.

'state action' with respect to it than would be required in other contexts . . . ." Coleman v. Wagner College, *supra,* 429 F.2d at 1127 (concurring opinion); see Friendly, The Dartmouth College Case and the Public-Private Penumbra 26 (1968). See also United States v. Wiseman, 445 F.2d 792, 795 n.3 and cases cited (2d Cir.), cert. denied, 404 U.S. 967, 92 S.Ct. 346, 30 L.Ed.2d 287 (1971).

We see no other theory of state involvement here which is possibly applicable. We recognize that the problems involved in determining whether "state action" is present are not susceptible of solution by facile formulae. Our examination of the Supreme Court decisions, as well as those of our own and other circuits, compels the conclusion, however, that none is present here.

Finding no state action, we affirm, without reaching the due process question.

IRVING R. KAUFMAN, Chief Judge (dissenting):

On or about August 23, 1972, the State National Bank of Connecticut seized a Ford Thunderbird in the possession of Joyce Shirley without so much as notifying her in advance, affording her an opportunity to abort the seizure at a prior hearing, or, by any other means, obtaining her meaningful consent.[1] My brothers do not reach the question whether the Bank's conduct was in conflict with the fundamental safeguards provided by due process because they, like the court below, cannot discern the "state action" requisite to establishing a violation of the Due Process Clause of the Fourteenth Amendment. Since I am

of the view that the lawful non-consensual taking of property is a uniquely governmental function, I consider its exercise, whether by state officials or by private individuals so empowered, subject to the due process constraints functionally required to avoid arbitrary deprivations. Accordingly, I must respectfully dissent.

The linchpin of the majority's reasoning is that

. . . since peaceful repossession existed at common law in Connecticut, the mere codification of that right does not, in our view, constitute state action. No delegation of traditional state power has been granted to any private person.[2]

Indeed, this reliance on the creditor's right to repossess at common law is highlighted by comparison of the instant holding with our recent decision in Hernandez v. European Auto Collision, Inc., 487 F.2d 378 (2d Cir. 1973). In *Hernandez,* we did not hesitate to reverse the dismissal of a complaint in an action where plaintiff challenged the constitutionality of the sale provisions of New York State's garageman's lien statute[3] on the ground that the lienor's power to sell the automobile without an opportunity for a prior hearing violated due process. Yet, the only distinction, frail indeed, between this case and *Hernandez* is that the private power to repossess existed at common law while in *Hernandez* the lienor's right to sell the encumbered chattel did not.[4] It is inconceivable that the fundamental right to be free of arbitrary deprivations of property should turn on the now disfavored theory of title passage[5] upon which the dif-

---

1. As in Fuentes v. Shevin, 407 U.S. 67, 94–96, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the fact that the plaintiff signed a form contract which authorized self-help repossession will not immunize a seizure, under a waiver theory, where it is otherwise defective because the property is seized without prior notice and an opportunity for a hearing. The absence of consent in the taking itself cannot be cured by resorting to the meaningless ritual of utilizing a contract of adhesion in which the fine print, even if read, fails to mention that the debtor has any right to a pre-seizure hearing.

2. The majority's holding in Adams v. Southern Cal. First Nat'l Bank, 492 F.2d 324 (9th Cir. 1973), similarly rests on the premise that "mere codification" of the common law cannot supply the requisite "state action."

3. N.Y. Lien Law § 200 et seq. (McKinney's Consol.Laws, c. 33, Supp.1972).

4. L. Hall, Possessory Liens in English Law 67 (1917).

5. *See* Uniform Commercial Code § 9–202.

fering rights of the conditional seller and the lien holder rested at common law. Instead, as one commentary aptly noted:

> The fact that the law under attack is new and creates, rather than codifies, common law rights should not change the inquiry. The focus for state action purposes should always be on the impact of the law upon private ordering, not the law's age or historical underpinnings. Unless the law in some fashion significantly interferes with private ordering, the challenged conduct should not be attributed to the state. To make state action turn upon whether the statutory right being asserted has common law origins would lead to anomalous results. The identical private conduct, pursuant to the identical state statutory or judicial law, would be state action in some states while not in others depending solely upon the fortuitous and unimportant circumstance of the age and history of the law.

W. Burke & D. Reber, State Action, Congressional Power and Creditors' Rights: An Essay on the Fourteenth Amendment, 47 S.Cal.L.Rev. 1, 47 (1973);[6] Cf. New York Times Co. v. Sullivan, 376 U.S. 254, 265, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Accordingly, unlike the majority, my analysis of the "state action" question begins rather than ends with the observation that the right of peaceful repossession without a hearing was recognized under the common law of Connecticut.

In merely codifying the common law right of repossession, Conn.Gen.Stat. Rev. § 42–98(a) faithfully incorporated the common law limitation on self-help, namely, that it be "without breach of the peace." If peaceful repossession were the equivalent of retaking with the consent of the property holder then I would applaud the wisdom of our forefathers in recognizing that negotiation is a far superior method of dispute resolution than is recourse to governmental disposition. But, the private right of repossession under common law, and as duly reflected by Conn.Gen.Stat.Rev. § 42–98(a), was not so narrowly defined. Peaceful repossession could also be effected, as indeed it was in this case, by silence and stealth.[7] It is this private, non-consensual taking, clothed in legitimacy first at common law and now by statute, which I find utterly inconsistent with and a total abdication of, the state's obligation to provide the minimal safeguards of procedural due process before an individual can be lawfully deprived of his property without his consent.

Why, after all, is the concept of due process considered so fundamental in our American constitutional system? Justice Harlan, in speaking for a majority of the Court in Boddie v. Connecticut, 401 U.S. 371, 374–375, 91 S.Ct. 780, 784, 28 L.Ed.2d 113 (1971), eloquently opined:

> Perhaps no characteristic of an organized and cohesive society is more fundamental than its erection and enforcement of a system of rules defining the various rights and duties of its members, enabling them to govern their affairs and definitively settle their differences in an orderly, predictable manner. Without such a "legal system," social organization and cohesion are virtually impossible; with the ability to seek regularized resolution of conflicts individuals are capable of interdependent action that enables them to strive for achieve-

---

6. Although I agree with the authors' reasoning, I cannot accept their resolution of this anomaly—to consider both self-help repossession and the sale of liened goods outside the purview of the Due Process Clause. W. Burke & D. Reber, supra, 47 S.Cal.L.Rev. at 46. Rather, in rejecting the attenuated subtleties that dictated the respective rights of debtors and creditors at common law, I would follow our holding in Hernandez v. European Auto Collision, Inc., supra, and

demand that the requirements of due process must be met here as well.

7. Although we have before us only the bare bones of the complaint, it is undisputed that the plaintiff was not notified in advance that her car would be taken. Indeed, the car had been brought to a garage for repair and the plaintiff was outside the state at the time of the repossession, according to the complaint.

ments without the anxieties that would beset them in a disorganized society. Put more succinctly, it is this injection of the rule of law that allows society to reap the benefits of rejecting what political theorists call the "state of nature."

American society, of course, bottoms its systematic definition of individual rights and duties, as well as its machinery for dispute settlement, not on custom or the will of strategically placed individuals, but on the common-law model. It is to courts, or other quasijudicial official bodies, that we ultimately look for the implementation of a regularized, orderly process of dispute settlement. Within this framework, those who wrote our original Constitution, in the Fifth Amendment, and later those who drafted the Fourteenth Amendment, recognized the centrality of the concept of due process in the operation of this system. Without this guarantee that one may not be deprived of his rights, neither liberty nor property, without due process of law, the State's monopoly over techniques for binding conflict resolution could hardly be said to be acceptable under our scheme of things. Only by providing that the social enforcement mechanism must function strictly within these bounds can we hope to maintain an ordered society that is also just. It is upon this premise that this Court has through years of adjudication put flesh upon the due process principle.

To be sure, Justice Harlan added that "private structuring of individual relationships and repair of their breach is largely encouraged in American life. . . ." *Id.* at 375, 91 S.Ct. at 785. The crucial point, however, is that our system of laws is bedrocked in the principle that the State has a "monopoly over techniques for binding conflict resolution." Moreover, the decisive difference between "binding conflict resolution," on the one hand, and "private structuring and . . . repair," on the other, is the element of voluntary, *mutual* consent, the presence of which permits the latter just as its absence requires the former. Accordingly, where, as here, the creditor is empowered, whether by common law or by statute, to unilaterally resolve a conflict, he is acting within a sphere reserved for the state alone and, therefore, his power, like state power, must be fettered by the restraints of due process.

Under the so-called "public function" test,[8] then, self-help repossession is infused with the requisite "state action" because the creditor acts pursuant to a grant of the state's monopoly power to lawfully seize a significant property interest without the consent of the holder. I would reach the same conclusion by applying the "state action" analysis proffered by my brother Friendly in his oft cited lecture, The Dartmouth College Case and The Public-Private Penumbra (1968) at 18, since the " . . . private action [self-help repossession] has resulted in a general and serious denial of values the [Fourteenth] Amendment was meant to protect. . . ."[9] Accordingly, finding the Bank's summary seizure of plaintiff's auto permeated with the necessary "state action," I would reverse.

8. *See* Evans v. Newton, 382 U.S. 296, 86 S. Ct. 486, 15 L.Ed.2d 373 (1966); Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L. Ed. 265 (1946); Smith v. Allwright, 321 U. S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944); Hall v. Garson, 430 F.2d 430 (5th Cir. 1970); cf. Coleman v. Wagner College, 429 F.2d 1120 (2d Cir. 1970).

9. By adopting this functional approach, one can easily distinguish the instant case from Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). Although the Fourteenth Amendment was not intended to interfere with the private ordering of interpersonal relationships and indeed, the tension between the First and Fourteenth Amendments in this respect is well-recognized, see, e. g., id. at 179, 92 S.Ct. 1965 (Douglas, J. dissenting), it was clearly designed "to protect [an individual's] use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property . . . ." Fuentes v. Shevin, *supra*, 407 U.S. at 81, 92 S.Ct. at 1994, 32 L.Ed.2d 556. Self-help repossession, without consent of the debtor whose property is seized, cannot fairly be characterized in any other way.